# IFTIKAR AHMED *v.* OAK MANAGEMENT CORPORATION
## (SC 20677)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Prescott, Js.*

*Syllabus*

The plaintiff employee, A, sought to vacate, and the defendant employer,
O Co., a venture capital firm, sought to confirm, an arbitration award
of approximately $57 million in damages and fees that was made in
connection with a dispute between the parties. The parties' employment
agreement contained an arbitration clause that provided that arbitration
would take place in Connecticut, be governed by Delaware law, and be
administered under the Commercial Arbitration Rules and Mediation
Procedures of the American Arbitration Association (AAA rules). After
federal criminal charges were filed against A for insider trading that
was unrelated to A's employment with O Co., O Co. investigated A's
employment related transactions and uncovered certain fraudulent
activities. O Co. subsequently terminated A's employment, seized the
earnings of A that were in O Co.'s possession, and shared the results
of its investigation with the Securities and Exchange Commission (SEC).
The SEC then brought a civil enforcement action against A, alleging
that A had fraudulently misappropriated approximately $65 million from

---

* This appeal originally was argued before a panel consisting of Chief
Justice Robinson, and Justices McDonald, D'Auria, Mullins, Ecker and Alex-
ander. Thereafter, Judge Prescott was added to the panel. He has read the
briefs and appendices, and listened to a recording of the oral argument
prior to participating in this decision.

348 Conn. 152　　OCTOBER, 2023　　153

Ahmed *v.* Oak Management Corp.

O Co. and its investors. Meanwhile, in violation of the conditions of his bail in the criminal insider trading case, A fled to his native country, India, where he was arrested and detained for having used invalid documents to enter the country. A federal court rendered judgment for the SEC in the civil enforcement action and ordered A to pay approximately $63 million in disgorgement and civil penalties, plus interest. Thereafter, O Co. filed an arbitration complaint against A, claiming breach of contract, breach of fiduciary duty, and fraud. A denied the allegations and asserted various affirmative defenses and counterclaims. A also sent numerous emails seeking to dismiss or delay the arbitration, claiming, inter alia, that he was being held by the government in India and was unable to leave the country, that illness prevented him from participating in a preliminary hearing conference call, and that he could not comply with the arbitrator's procedural deadlines because he did not have access to a personal computer because of India's nationwide shutdown in response to the COVID-19 pandemic. Ultimately, the arbitrator set a deadline for the filing of dispositive motions, by which time A filed motions for summary judgment and to dismiss, and O Co. filed a motion for an order prohibiting A from viewing certain purportedly confidential documents and a motion seeking the application of the fugitive disentitlement doctrine, an equitable doctrine that limits access to the courts by fugitives from justice. Before A responded to O Co.'s motions, the arbitrator granted O Co.'s motions and denied A's motions. Relying on AAA Rule R-47 (a), which was incorporated into the parties' agreement and which permits an arbitrator to grant any remedy or relief that he "deems just and equitable and within the scope of the agreement of the parties," as authority to apply the fugitive disentitlement doctrine, the arbitrator dismissed A's counterclaims, struck his affirmative defenses, and barred him from contesting O Co.'s allegations. The arbitrator also prohibited A from accessing purportedly confidential documents in O Co.'s possession and scheduled a hearing in damages, which A again sought to postpone because he allegedly was quarantined as a result of testing positive for COVID-19. The arbitrator denied A's request to postpone the proceedings, conducted the damages hearing using remote technology without either A or his representative present, and thereafter issued the approximately $57 million award in favor of O Co. In his application to vacate the award filed in Superior Court, A relied on, inter alia, each of the statutory grounds for vacatur set forth in the state statute (§ 52-418 (a)) governing the vacating of arbitration awards and the corresponding provisions in the Federal Arbitration Act (9 U.S.C. § 1 et seq.). He also claimed that the award violated public policy because the arbitrator decided the matter on an ex parte basis, denying him the opportunity to refute O Co.'s allegations and any semblance of fairness or due process. The trial court rendered judgment denying A's application to vacate and granting O Co.'s motion to confirm. On A's appeal from the trial court's judgment in favor of O Co., *held*:

Ahmed *v.* Oak Management Corp.

1. A could not prevail on his claim that the arbitration award should have been vacated pursuant to § 52-418 (a) (4) on the ground that the arbitrator had exceeded his authority, insofar as the AAA rules and Delaware law both required the arbitrator to provide the parties with a full and fair hearing, and on his claim that the arbitrator had no authority to apply the fugitive disentitlement doctrine, thereby abrogating A's right to a full and fair hearing:

A's claims were premised on the argument that it was improper for the arbitrator to rely on AAA Rule R-47 as authority for applying the fugitive disentitlement doctrine because the arbitration clause in the parties' agreement did not expressly authorize that specific type of equitable relief and that such relief therefore was not "within the scope of the agreement of the parties" for purposes of that AAA rule.

Nevertheless, numerous courts have interpreted that language in AAA Rule R-47 as permitting relief or remedies in the absence of an express limitation on such relief or remedies, rather than as requiring an express authorization of such relief or remedies, and this court's review of Delaware law revealed that the courts of that state, which have recognized the fugitive disentitlement doctrine, would follow that approach.

Moreover, no court in Delaware or anywhere else has barred the application of the fugitive disentitlement doctrine in the context of arbitration.

To the extent that A claimed that the arbitrator had misapplied the fugitive disentitlement doctrine as a matter of law, he could not prevail on that claim because, even if he were correct, vacatur pursuant to § 52-418 (a) (4) cannot be based on mere legal error but only on manifest disregard of the law, and A did not claim that the arbitrator's actions satisfied that onerous standard.

Furthermore, the lack of an explicit reference to the fugitive disentitlement doctrine in the parties' agreement was immaterial, as the question was not whether the parties specifically anticipated application of the fugitive disentitlement doctrine in name but whether the arbitrator drew the essence of that equitable remedy from the underlying contract.

In addition, arbitrators are afforded greater flexibility in fashioning remedies than are courts, nothing in the parties' agreement explicitly restricted the arbitrator's remedies to fewer than those available to the courts, AAA Rule R-47, as incorporated into the parties' agreement, recognizes that a party might engage in conduct that justifies an arbitrator's issuance of an order that impairs or abrogates the party's right to present his case, and whether the arbitrator struck the proper balance in issuing such an order was not a question of whether the arbitrator exceeded his authority but of whether the arbitrator properly exercised his discretion.

Ahmed *v.* Oak Management Corp.

In the present case, the arbitrator crafted orders that benefited O Co., which had timely prepared to present its case in the agreed on forum, to the detriment of A, who had flouted the law and then attempted to use his absence to delay the proceedings, the arbitrator, in crafting such orders, reasonably could have considered A's failure to satisfy certain conditions that would have allowed him to fully participate through counsel, and the substance of A's filings, both in the arbitration and in the civil enforcement proceeding, reasonably could have raised doubts as to whether A really lacked the services of counsel.

Accordingly, this court could not conclude that the arbitrator, in invoking the fugitive disentitlement doctrine, did not draw the essence of his arbitration award from the parties' agreement, including the AAA rules incorporated into that agreement, or that the award necessarily fell outside the scope of the arbitrator's authority, in light of the unusual and challenging circumstances facing the arbitrator in this case, which were precipitated by A's own actions.

2. There was no merit to A's claim that the arbitration award should have been vacated pursuant to § 52-418 (a) (3) on the grounds that the arbitrator had declined to hear pertinent and material evidence and had engaged in prejudicial misconduct by preventing A from defending himself and pursuing a counterclaim, and by reviewing the evidence against him:

A's claim that the arbitrator's refusal to hear pertinent and material evidence constituted a ground for vacatur under § 52-418 (a) (3) was unavailing, insofar as a party challenging an award on the basis of such a refusal must prove that he was deprived of a full and fair hearing by virtue of an adverse evidentiary ruling, and the disentitlement order was not an evidentiary ruling.

Moreover, although this court has described the prejudicial misconduct ground for vacatur in § 52-418 (a) (3) as applying to procedural irregularities, the disentitlement order could not be characterized as a procedural irregularity in light of this court's determination that the arbitrator did not exceed his authority in issuing that order, and the order did not implicate the fundamental fairness of the proceeding in light of A's own dilatory conduct that was itself frustrating the fairness of the proceeding.

Furthermore, A failed to establish that he was substantially prejudiced by the arbitrator's misconduct, as nothing in the record or in A's appellate brief indicated what evidence A would have offered at a hearing on liability if the fugitive disentitlement doctrine had not been applied, A made no representation that he would have testified as to any material fact that could have cast doubt on his culpability for the acts alleged, A did not claim that he had any other basis to contest O Co.'s allegations against him, and, to the extent that A identified topics on which he would have offered argument or evidence, each of them pertained to damages,

Ahmed *v.* Oak Management Corp.

and he could have made those arguments at the hearing in damages if he had opted to participate.

With respect to the arbitrator's order barring A from accessing purportedly confidential materials in O Co.'s possession, there was no basis to conclude that A's concerns could not have been raised at the hearing in damages, in which he did not participate, and A could have sought independent review of the alleged overbreadth of the confidentiality determinations made by O Co., which had been given unilateral authority to designate which documents were confidential.

In addition, this court rejected A's claim that he was not required to establish that he had been prejudiced by the arbitrator's alleged misconduct on the ground that the arbitrator's actions constituted structural error and, therefore, were prejudicial per se, as A failed to identify any case in which structural error has been applied to any ground for the vacating of an arbitration award, and, although it might be reasonable to presume prejudice when a party is deprived of a hearing on the merits, the exceedingly unusual circumstances of the present case demonstrated that such a presumption would have been easily overcome.

3. A could not prevail on his claim that the arbitration award violated the public policy of fundamental fairness in arbitration proceedings, as he failed to identify a clearly established public policy that was violated by virtue of the award's having been given effect:

Even if statements in case law may constitute the expression of a well-defined and dominant public policy, A's reliance on case law standing for the proposition that parties to an arbitration must be afforded an opportunity to know the evidence against them and to present evidence in their favor was misplaced, as that case law did not hold that those rights were immutable such that no conduct could justify their impairment or forfeiture, especially when AAA Rule R-47, which was incorporated into the parties' agreement, acknowledges an arbitrator's authority to issue an order that has such an effect under certain circumstances.

Moreover, certain statements in this court's cases recognizing the broader public policy of upholding the integrity of the arbitration process simply embodied a policy justifying the extraordinary statutory grounds on which an award may be vacated, and there was no indication of an intention to articulate a public policy that would allow courts to vacate an award in light of the presumption that the arbitrator correctly interpreted the parties' agreement to authorize the relief ordered.

4. A could not prevail on his claim that the arbitration award should have been vacated pursuant to certain provisions (9 U.S.C. § 10 (a) (3) and (4)) of the Federal Arbitration Act:

348 Conn. 152 OCTOBER, 2023 157

Ahmed *v.* Oak Management Corp.

This court has recognized that the federal grounds for vacatur in 9 U.S.C. § 10 (a) (3) and (4) are virtually identical to those enumerated in § 52-418 (a) (3) and (4), A identified no case law that supported a different interpretation of the federal provisions, and this claim was based on the same arguments that A asserted in support of his grounds for vacatur under state law, which were rejected.

5. This court declined A's invitation to remand the case to allow the trial court to modify the amount of the arbitrator's award, which A argued was necessary to prevent an impermissible multiple recovery by O Co. for the same conduct:

The statute (§ 52-419 (a) (1)) on which A relied authorizes the trial court to modify an award when there has been a "miscalculation of figures," which constitutes a mathematical rather than a legal error, and, although A claimed that O Co. stood to obtain a "remarkable windfall," any purported error in this regard was legal in nature, rather than a miscalculation.

(*Three justices dissenting in one opinion*)

Argued November 15, 2022—officially released October 17, 2023

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a motion to confirm the award; thereafter, the case was tried to the court, *Hon. Kenneth B. Povodator*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment denying the plaintiff's application to vacate and granting the defendant's motion to confirm, from which the plaintiff appealed. *Affirmed.*

*Gregory Dubinsky*, pro hac vice, with whom were *Zachary J. Phillipps*, *Andrew Chang*, pro hac vice, and, on the brief, *Vincent Levy*, pro hac vice, and *Daniel M. Young*, for the appellant (plaintiff).

*David K. Momborquette*, pro hac vice, with whom was *David T. Grudberg*, for the appellee (defendant).

*Opinion*

D'AURIA, J. This appeal arises under highly unusual, perhaps unprecedented, circumstances, involving the

Ahmed *v.* Oak Management Corp.

application of the "fugitive disentitlement doctrine"[1] in an arbitral proceeding but implicates settled law on the limits of judicial review of arbitral awards. The plaintiff, Iftikar Ahmed, appeals[2] from the trial court's judgment denying his application to vacate an arbitration award rendered in favor of the defendant, Oak Management Corporation (Oak), and granting Oak's motion to confirm the award.[3] Ahmed contends that the trial court erroneously declined to vacate the award because the arbitrator had deprived him of the full and fair hearing to which he was entitled, in violation of governing law, public policy, and the parties' arbitration agreement.

---

[1] One court has described the fugitive disentitlement doctrine, also known as the fugitive from justice rule, as follows: "The fugitive disentitlement doctrine is an equitable doctrine that limits access to the courts by fugitives from justice. . . . Although fugitive status does not strip the case of its character as an adjudicable case or controversy . . . it disentitles the [fugitive] to call upon the resources of the [c]ourt for determination of his claims. . . . The fugitive disentitlement doctrine has been applied to dismiss fugitives' criminal and civil appeals, as well as fugitives' affirmative claims for relief." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Pharaon*, 178 F.3d 1159, 1161 (11th Cir. 1999); see also *Walsh* v. *Walsh*, 221 F.3d 204, 214 (1st Cir. 2000) ("Fugitive disentitlement cases arise in three distinct procedural postures: [1] criminal and civil appeals brought by the fugitive; [2] civil suits brought against the fugitive (e.g., civil forfeitures); [3] civil suits brought by the fugitive (e.g., [actions under 42 U.S.C. § 1983]). The [United States] Supreme Court has considered cases in [only] the first two categories . . . ."), cert. denied, 531 U.S. 1159, 121 S. Ct. 1113, 148 L. Ed. 2d 982 (2001), and cert. denied, 531 U.S. 1159, 121 S. Ct. 1113, 148 L. Ed. 2d 982 (2001). Although the "original reason for the fugitive dismissal rule [was] to ensure that courts don't waste time affirming a judgment that can't be enforced against the absconder"; *In re Kupperstein*, 943 F.3d 12, 24 (1st Cir. 2019); its purposes have evolved to include the need to "avoid delay or prejudice to the other side, protect the court's 'dignity,' and deter flight [in future cases]." Id., 20. The parties in the present case dispute the precise requirements for and limits of the doctrine's application. The issues raised on appeal, however, do not require us to address those issues.

[2] Ahmed's appeal to the Appellate Court from the judgment of the trial court was transferred to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

[3] In the various other proceedings discussed in this opinion, Ahmed was the defendant or the respondent. For clarity, we refer to the parties by name.

348 Conn. 152 OCTOBER, 2023 159

Ahmed *v.* Oak Management Corp.

Specifically, Ahmed contends that the arbitrator improperly applied the fugitive disentitlement doctrine to prevent him from asserting counterclaims or defenses, contesting Oak's allegations, and viewing the evidence against him. After considering the grounds he has raised for vacating the award, we conclude that, notwithstanding the gravity of the arbitrator's rulings, Ahmed has not satisfied any of the legal standards required for reversal of the judgment. We therefore affirm the trial court's judgment.

I

Oak, a Delaware corporation with its primary place of business in Connecticut, is the manager of various venture capital investment funds. From 2004 to 2015, Oak employed Ahmed as an investment professional and a managing member of entities that served as general partners of certain Oak funds. Among other things, Ahmed was responsible for identifying companies in which Oak might invest, recommending investments, and negotiating the terms of investments with those companies. Oak compensated Ahmed with a base salary and payments tied to the performance of the companies for which he had investment responsibilities.

Ahmed's employment agreement included an arbitration clause. The agreement provided that the arbitration would (1) take place in Fairfield County, Connecticut, (2) be governed by Delaware law, and (3) be administered under the 2013 Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association (AAA). The agreement also provided that the "arbitrator's decision shall be final and binding to the fullest extent permitted by law."

The issues in the present arbitration arose in connection with other civil and criminal cases that were brought against Ahmed. It is important that we place the undis-

160                OCTOBER, 2023        348 Conn. 152

puted facts and procedural history of the present case in the context of those cases.

A

Criminal and Civil Actions Brought in Federal Court

In April, 2015, while employed by Oak, Ahmed was arrested for insider trading, in violation of federal securities law, unrelated to his employment by Oak. See *United States* v. *Kanodia*, Docket No. 15-10131-NMG, 2016 WL 3166370, *1 (D. Mass. June 6, 2016); see also *United States* v. *Ahmed*, 414 F. Supp. 3d 188, 189 (D. Mass. 2019), appeal dismissed, Docket No. 19-2214, 2020 WL 2950646 (1st Cir. March 23, 2020), and appeal dismissed, Docket No. 19-2213, 2020 WL 2944997 (1st Cir. April 13, 2020), cert. denied,        U.S.        , 141 S. Ct. 1386, 209 L. Ed. 2d 127 (2021). At about the same time, the United States Securities and Exchange Commission (SEC) brought a civil enforcement action against Ahmed based on the same alleged conduct that gave rise to his criminal prosecution. See *United States Securities & Exchange Commission* v. *Kanodia*, 153 F. Supp. 3d 478, 480 (D. Mass. 2015); see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 15-cv-13042-ADB, 2021 WL 916266, *1 (D. Mass. March 10, 2021).

When Oak learned of those allegations, it placed Ahmed on leave and undertook an investigation into his employment related transactions. That investigation led Oak to discover what it believed to be fraudulent activities in connection with several investments. Oak shared the fruits of its investigation with the SEC.

In early May, 2015, the SEC brought a second civil enforcement action against Ahmed (civil fraud action). See *Securities & Exchange Commission* v. *Ahmed*, 123 F. Supp. 3d 301, 305 (D. Conn. 2015), aff'd sub nom. *Securities & Exchange Commission* v. *I-Cubed Domains*,

Ahmed *v.* Oak Management Corp.

*LLC*, 664 Fed. Appx. 53 (2d Cir. 2016). This action alleged that Ahmed had engaged in a decade-long fraud that resulted in the misappropriation of approximately $65 million from Oak and its investors. Id. The SEC alleged that Ahmed, among other things, had misrepresented the price of an investment he advised Oak to make, engaged in self-dealing by misrepresenting or concealing his personal stake as the counterparty in various transactions he entered into on Oak's behalf, and funneled the illicit proceeds into bank accounts he claimed belonged to parties to the deals but that, in fact, he had opened and secretly controlled. Id. The United States District Court for the District of Connecticut granted the SEC's motion to freeze all of Ahmed's assets, up to approximately $118 million, until the conclusion of the civil fraud action. Id., 314–15. The court also stayed all civil proceedings, including arbitration, that sought to secure assets subject to the freeze. Id., 315; see *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2020 WL 4333570, *1 (D. Conn. July 28, 2020). Shortly after the SEC filed the civil fraud action, Oak terminated Ahmed's employment for cause and, under a claim of forfeiture pursuant to the parties' employment agreement, seized his earnings that were in Oak's possession.

In mid-May, 2015—just weeks after Ahmed's arrest on the federal charges, the SEC brought its two civil actions, and Oak initiated the investigation that led to the termination of his employment—Ahmed fled the United States for his native country, India, violating the conditions of his bail in the criminal insider trading case. See *Securities & Exchange Commission* v. *Ahmed*, supra, 123 F. Supp. 3d 306 and n.1. Shortly after his arrival, officials in India purportedly arrested Ahmed for using invalid documents to enter the country and detained him until bail was posted.[4] See id., 306 n.1;

_____

[4] According to a copy of a document titled "Charge Sheet/Final Report," dated July 5, 2018, that Ahmed submitted in the arbitration proceedings,

Ahmed *v.* Oak Management Corp.

see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2016 WL 10568257, *1 and n.3 (D. Conn. February 18, 2016).

In June, 2015, a federal grand jury indicted Ahmed on criminal charges related to the allegations in the civil fraud action, and a criminal complaint was filed in August, 2015.[5] See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10568257, *1. Ahmed could not formally be charged due to his absence from this country. See id., *3.

Litigation in the civil fraud case, however, continued over the next few years, in the course of which the effect of Ahmed's "fugitive" status arose during discovery. Ahmed had moved for an order requiring the SEC to grant him full access to its investigative file, which included purportedly confidential Oak documents. See *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15-CV-675 (JBA), 2016 WL

his arrest in India stemmed from the fact that, as an American citizen, he was required to use his United States passport and an Indian visa to enter that country but, instead, used his Indian passport, which had become invalid by operation of law when Ahmed obtained United States citizenship. The charge sheet also indicated that Ahmed had falsely reported that he lost his United States passport and had applied for a temporary United States passport and exit visa. It is unclear whether the arbitrator credited this document, which does not appear to have been independently authenticated, or when Ahmed submitted it in the proceedings. In his orders, the arbitrator characterized some of Ahmed's "claim" as to why he was unable to be present in Connecticut in various ways that were not consistent with this report but made no finding as to whether he credited any of these explanations. Even if we assume the report's authenticity, we note that it was issued more than one year before the United States District Court for the District of Massachusetts found that Ahmed had "refus[ed]" to return to Massachusetts and just shy of one year before Oak filed its arbitration complaint. *United States* v. *Ahmed*, supra, 414 F. Supp. 3d 189. Ahmed submitted no evidence regarding his inability to leave India after those events.

[5] Ahmed was initially charged with money laundering relating to the transfer of funds in connection with the civil fraud action. That indictment apparently was superseded by an indictment alleging that Ahmed had committed wire fraud and falsified tax returns in connection with the fraud alleged in the civil fraud action.

Ahmed *v.* Oak Management Corp.

10572640, *1 (D. Conn. August 22, 2016), vacated in part on other grounds, 72 F.4th 379 (2d Cir. 2023); see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2017 WL 5525837, *1 (March 3, 2017). The SEC opposed the motion. The District Court denied Ahmed's request because of the confidential nature of the materials and the court's inability to limit effectively his use of the materials through a protective order while he " 'remain[ed] a fugitive.' "[6] *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 5525837, *1. The court cited its inherent power over discovery and the fugitive disentitlement doctrine as authority to deny the request. *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10572640, *1–2. The court held that Ahmed could renew his request "if and when he return[ed] to the United States and execute[d] appropriate protective orders." Id., *2. The District Court later denied Ahmed's requests to compel Oak to produce "a multitude of confidential documents, which [the court had] already decided . . . it [would] not permit him access to while he remain[ed] outside of its jurisdiction." *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2018 WL 1541902, *3 (D. Conn. March 29, 2018); see *Securities & Exchange Commission* v. *Ahmed*, Docket No. 15 CV 675 (JBA), 2017 WL 3169059, *2 (D. Conn. July 26, 2017); *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 5525837, *1.

Ahmed invoked his fifth amendment privilege against self-incrimination and declined to testify or participate in discovery the SEC sought in the civil fraud case. See

---

[6] The District Court conversely had ordered production of certain documents in the SEC's investigative file in the civil insider trading action, in which a protective order was a viable option because Ahmed was represented by counsel in that action and the court was able to order counsel not to provide discovery to Ahmed, directly or indirectly. Ahmed represented himself, however, in the civil fraud action.

Ahmed *v.* Oak Management Corp.

*United States Securities & Exchange Commission* v. *Ahmed*, 308 F. Supp. 3d 628, 638 (D. Conn. 2018). In 2018, the District Court rendered summary judgment in favor of the SEC as to liability. See id., 673. After separate proceedings, the court entered a financial order directing Ahmed to pay the SEC approximately $63 million in disgorgement and civil penalties, plus interest. See *United States Securities & Exchange Commission* v. *Ahmed*, 343 F. Supp. 3d 16, 39 (D. Conn. 2018), vacated in part, 72 F.4th 379 (2d Cir. 2023). Ahmed's appeals in the civil fraud case are pending before the United States Court of Appeals for the Second Circuit.

B

Arbitration

After the rendering of judgment in the civil fraud case, approximately four years after Oak terminated Ahmed's employment, Oak successfully moved in federal court for an order lifting the litigation stay to allow it to pursue the present arbitration action. See *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2019 WL 11824929, *1–2 (D. Conn. May 21, 2019) (noting Oak's representation that arbitration claims that it sought to assert were largely based on same conduct underlying civil fraud case but that damages that Oak sought had not been sought by or awarded to SEC in its action against Ahmed). In June, 2019, Oak filed an arbitration complaint, asserting claims of breach of contract, breach of fiduciary duty, and common-law fraud. Ahmed filed an answer denying the allegations and asserted affirmative defenses and counterclaims.[7] Oak filed a response

---

[7] Ahmed's defenses included unclean hands and contributory negligence. He based his counterclaims on allegations that Oak had violated his employment agreement by bringing its allegations to the SEC instead of litigating them through arbitration, and that Oak had unlawfully seized his vested assets that were in Oak's possession and unlawfully withheld distributions to him when it knew of and approved of his conduct.

Ahmed *v.* Oak Management Corp.

asserting, among other things, that Ahmed's status as a fugitive from justice barred him from seeking affirmative relief. On several occasions, Ahmed disputed his fugitive status to the AAA or the arbitrator, claiming that no court had made this legal determination and that none could because his absence was due to his detention by Indian authorities.

In fact, in the criminal insider trading case, the United States District Court for the District of Massachusetts expressly made this legal determination in November, 2019. Specifically, in granting the government's motion for forfeiture of Ahmed's appearance bond, the court found: "At some time in May, 2015, [Ahmed] *absconded*, apparently to India. . . . [Ahmed] has *deliberately* flouted his bail conditions. He has failed to appear in court, has not reported to a probation officer and *is a fugitive*. His *refusal to return to Massachusetts* has prevented the government from prosecuting him." (Citations omitted; emphasis added.) *United States* v. *Ahmed*, supra, 414 F. Supp. 3d 189–90.

From late 2019 to early 2020, Ahmed sent numerous emails to the AAA, arguing that the arbitration complaint should be dismissed or the proceedings delayed. These matters were left for resolution by the subsequently appointed arbitrator, Robert B. Bellitto, who scheduled a "preliminary hearing" conference call for March 6, 2020. In response to emails, purportedly from Ahmed's legal advisor in India, stating that Ahmed would be unable to participate in the call because of an "emergency development"—he claimed to have become seriously ill and to have been ordered sequestered for one month's bed rest[8]—the arbitrator gave Ahmed an opportunity to submit proper medical docu-

[8] Oak submitted an affidavit to the arbitrator in support of a claim that Ahmed had misappropriated the name of an attorney in India to make it appear as if someone other than Ahmed was sending the emails regarding the obstacles to Ahmed's participation.

Ahmed *v.* Oak Management Corp.

mentation on the record in support of that claim. After Ahmed failed to provide documentation that satisfied the arbitrator, the conference call went forward on March 20, 2020, with Ahmed representing himself.

The arbitrator directed the parties to submit briefs, by April 3, 2020, addressing Ahmed's argument that the arbitration should be postponed because Ahmed would be prejudiced due to "his [inability] to attend an in-person hearing, or otherwise [to] participate therein, by reason of the fact that he is currently in India, prevented from leaving said country, by reason of his being held there under order of its [g]overnment . . . ." Ahmed did not file a brief and instead sent a lengthy email to the AAA, purportedly from his phone, seeking to delay the arbitration. He stated that he could not comply with the arbitrator's deadline because he had no personal computer and could not access one due to India's twenty-one day nationwide shutdown in response to the COVID-19 pandemic. Oak argued in reply that Ahmed's assertions should not be credited, given his prior mis-representations aimed at delaying the proceedings and his contemporaneous filings in the civil fraud action, which demonstrated that he had access to technology that would permit him to submit a timely response to the order.

On April 1, 2020, the arbitrator issued a scheduling order, setting a May, 2020 deadline for dispositive motions and July, 2020 dates for the hearing on the merits. The order initially provided: "If [Ahmed] chooses not to appear in person or by a formally appointed representative, the hearing will proceed without his participation." The order further advised that "[n]either party is authorized to file any additional motions without first requesting permission from the [arbitrator], clearly stating therein the scope of said motion and the reasons for its necessity."

Ahmed *v.* Oak Management Corp.

After additional communications from Ahmed pressing his arguments for postponing the arbitration, the arbitrator informed the parties that he was denying the request for postponement and ordered Ahmed "not to file ANY writings beyond those that are addressed by this [o]rder and previous [o]rders." (Emphasis in original.) Over Ahmed's objection, the arbitrator simultaneously granted Oak's request for permission to file a motion for a protective order shielding confidential documents from Ahmed's access. The arbitrator directed Oak to include legal briefing in that motion concerning Ahmed's right to view the evidence against him to ensure a fair hearing as compared to the need for confidentiality.

Within days after the arbitrator directed Ahmed not to file further motions without permission, he sent several letters to the AAA seeking the arbitrator's disqualification for violating due process and the procedures required under AAA rules. In response, Oak argued that Ahmed's disqualification arguments were baseless, recycled, and constituted merely another delay tactic, and that any obstacles that he encountered as a result of his detention in India were of his own making. The arbitrator did not respond to the filings but did amend his scheduling order to make clear that Ahmed could appear at the hearing on the merits through Skype or another remote platform.

C

Liability

On May 15, 2020, the deadline for filing dispositive motions in the arbitration, Ahmed filed a motion for summary judgment and a motion to dismiss. He claimed that Oak's claims were untimely, that Oak had unclean hands or was contributorily negligent, and that Oak had waived its right to arbitrate by bringing its allegations to the SEC in violation of the employment agreement.

Ahmed *v.* Oak Management Corp.

Ahmed appended a statement of "undisputed" facts and approximately 200 pages of exhibits, primarily transcripts from other legal proceedings involving Oak.

Simultaneously, Oak filed the two motions that gave rise to the issues in the present appeal. In its "Motion for Entry of an Order Prohibiting [Ahmed] from Access to Confidential Documents," Oak asserted that its evidence "contains confidential information that is subject to the federal protective orders currently in place," which prohibited Ahmed from accessing confidential materials while he remained outside of the court's jurisdiction. In its memorandum of law in support of its "Motion for an Order Applying the Fugitive Disentitlement Doctrine," Oak claimed that, by becoming a fugitive from justice, Ahmed waived his " 'due process rights' " in any action relating to the facts that gave rise to his fugitive status. Oak advanced legal support for its argument that arbitrators may apply the disentitlement doctrine, that Ahmed's confinement in India did not alter his status as a fugitive from both the fraud and insider trading actions, civil and criminal, and that applying the doctrine would not offend notions of fairness or equity. Oak asked the arbitrator to apply the fugitive disentitlement doctrine to its fullest extent and, therefore, to strike Ahmed's counterclaims, to dismiss his affirmative defenses, and to bar him from contesting Oak's allegations.

The arbitrator's scheduling order did not set a deadline for either party to respond to the other's dispositive motions or otherwise indicate that responses were permitted. The arbitrator had, however, previously set a deadline of June 8, 2020, for Ahmed to respond to Oak's motion for a protective order.

Ahmed had provided no response as of May 22, 2020, when the arbitrator issued a written order disposing of the pending motions. In his summary of facts and

348 Conn. 152 OCTOBER, 2023 169

Ahmed *v.* Oak Management Corp.

procedural background, the arbitrator discussed the allegations of criminal conduct by Ahmed and the several legal actions brought against him. The arbitrator cited the protective orders issued in the civil fraud case and the determination in the criminal case that Ahmed was a "fugitive from justice."[9] The arbitrator noted Ahmed's claim that he "cannot" reenter the United States because he had lost his passport, a claim that was inconsistent with the court's finding in the criminal case that he had refused to return to the United States, preventing the government from prosecuting him. See *United States* v. *Ahmed*, supra, 414 F. Supp. 3d 190. The arbitrator also noted that "[Ahmed] claims he is not represented by an attorney. [He] further states that he communicates with this tribunal and the [federal] [c]ourts utilizing a cell phone. He also denies any access to legal research tools; however, all of the documents that he has filed in this [a]rbitration are in a legal format, utilizing properly sized paper; presented with proper captioning; presenting legal theories associated therewith; and citing case[s] and legal authority in support thereof, in conformity with accepted legal procedure."

The legal analysis section of the arbitrator's order contained the following principles and conclusions:

"C. Fugitive disentitlement is an equitable [d]octrine that operates as a waiver of a fugitive's due process rights in any action that is related to the facts giving rise to said fugitive's status, barring said fugitive from asserting both affirmative claims and contesting allegations against the related proceedings. Its intent is to prevent such person from seeking relief from a judicial

---

[9] We assume that the arbitrator was referring to the November, 2019 order of the District Court in the criminal insider trading case. The arbitrator also presumably referred to the other criminal indictment filed against Ahmed shortly after he fled the United States by citing allegations that Ahmed had engaged in money laundering and had failed to report the fraudulently obtained money on his tax returns. See footnote 5 of this opinion.

Ahmed *v.* Oak Management Corp.

system that said fugitive has evaded. . . . The [d]octrine originally applied to criminal appeals but has been extended to related civil proceedings. . . . Originally, the [d]octrine was limited to appeals, but it has been extended to be applied to trial levels also. . . .

"D. Pursuant to AAA [Rule R-47] (a), an arbitration may grant any remedy or relief if deemed justified and equitable.

"E. By reason of the application of the aforementioned [d]octrine, the [p]leadings filed by [Ahmed] ought to be denied.

"F. Notwithstanding the effect of said [d]octrine, the merits of [Ahmed's] motions [for summary judgment and to dismiss] would fail . . . ." (Citations omitted.)

The arbitrator explained that Ahmed's absence tolled the statute of limitations, that the facts Ahmed asserted were not undisputed simply because he said so, and that his allegations were legally insufficient to justify dismissal: "The entirety thereof is a conclusion of [Ahmed] that he may have committed his actions that [led] to this action because the upper management of [Oak] did not properly supervise him."

The order then directed as follows:

"1. [Oak's] [m]otion for an [o]rder prohibiting [Ahmed] from access to confidential documents is granted. [Ahmed] is prohibited from accessing, in any manner, confidential documents and information in this proceeding.

"2. [Oak's] [m]otion for an [o]rder applying the fugitive disentitlement doctrine is granted. [Ahmed's] counterclaims filed against [Oak] are dismissed; the affirmative defenses filed by [Ahmed] against [Oak] are stricken.

"3. [Ahmed] is barred from contesting the allegations contained within [Oak's] [s]tatement of [c]laim.

Ahmed *v.* Oak Management Corp.

"4. [Ahmed's] [m]otions are denied in their entirety.

"5. This case will proceed to hearing as previously scheduled [July 21 through July 24] *as a hearing in damages*." (Emphasis added.)

Ten days after the arbitrator issued that order, Ahmed sent the AAA a thirty-four page motion, in legal format with legal citations, seeking to disqualify the arbitrator on the grounds of bias and prejudice. Ahmed claimed that the arbitrator had, ex parte, granted Oak's motions in their entirety and ordered all relief requested in those orders without allowing Ahmed to respond to those motions. He further contended that applying the fugitive disentitlement doctrine to deprive him of any opportunity to participate in the proceedings violated the law, principles of equity, and the terms governing the arbitration. The AAA thereafter notified the parties that it had determined that the arbitrator should not be disqualified.

D

Damages

Several weeks before the damages hearing, Oak provided Ahmed with copies of two of the exhibits it planned to introduce. Both exhibits were court rulings in the SEC civil fraud action that were matters of public record. Oak informed Ahmed that the rest of its exhibits were confidential. It does not appear that Oak submitted a document, like a privilege log, generally describing the exhibits and the basis for shielding them.

Approximately one week before the hearing, Ahmed again emailed the AAA, this time seeking an indefinite or unspecified postponement of the arbitration. He contended that he was unable to participate either in person (due to his inability to leave India) or remotely (due to the COVID-19 pandemic and a lack of funds to hire counsel). Oak objected to Ahmed's request. On July 18, 2020, the arbitrator informed the AAA, which, in turn,

Ahmed *v.* Oak Management Corp.

informed the parties, that the damages hearing would go forward on July 21, 2020, but, due to COVID-19 restrictions, would instead be conducted remotely via the Zoom platform.

The morning of the damages hearing, an email was sent to the AAA, again under the name of the same attorney in India; see footnote 8 of this opinion; asserting that Ahmed "is currently quarantined in a care facility due to [a] positive [COVID-19] test with no access to computers or devices to be able to join any hearing via video. He is under the supervision of medical care. He is not able to attend any hearings whatsoever. My understanding of your AAA [r]ules is that [Ahmed] is entitled to attend any and all hearings." (Emphasis omitted.)

In response to a query by the AAA, Oak objected to postponement: "Putting aside credibility issues with respect to [Ahmed's] health, much if not all of the testimony today concerns confidential information that [Ahmed] would not be permitted to access." Ahmed's "attorney" replied that "[t]he confidentiality issues are irrelevant to whether or not [Ahmed] can attend the hearing." The arbitrator denied the request to postpone the damages hearing.

Neither Ahmed nor any representative of his participated in the July 21, 2020 damages hearing. Two weeks after the hearing, Oak provided Ahmed with copies of the posthearing brief and affidavits the arbitrator had ordered Oak to submit in support of its request for damages and attorney's fees; both contained substantial redactions. The arbitrator did not direct Ahmed to file a posthearing brief, and Ahmed made no request to do so before the hearing was declared closed. On August 20, 2020, the AAA notified the parties that the arbitrator had declared the hearings closed as of August 11, 2020. The following day, Ahmed sent an email to the AAA

Ahmed *v.* Oak Management Corp.

opposing the closure of the hearing and any award in favor of Oak. He contended that the proceedings contravened due process and AAA rules by failing to provide him with any opportunity to respond to Oak's motions or to provide pertinent and material evidence. Ahmed did not apply to the arbitrator to open the hearing, as permitted by AAA Rule R-40. See generally American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (October 1, 2013) (AAA Rules).

Five days later, the arbitrator issued an award in favor of Oak. The award noted that Ahmed "ha[d] failed to appear after due notice by mail in accordance with the [r]ules of the American Arbitration Association . . . ." The award later stated that Ahmed, "by reason of the [common-law] doctrine of fugitive disentitlement . . . having been previously applied, was not present and did not participate." The arbitrator awarded Oak approximately $57 million in damages and fees, $33.3 million of which constituted reimbursement for all compensation Oak had paid Ahmed during his term of employment as equitable disgorgement. The arbitrator found Ahmed to have engaged in "malicious, outrageous" conduct, and to have evidenced an "evil motive and reckless indifference to the rights of his clients and employer, for which he . . . has shown little or no remorse." Despite these findings, the arbitrator limited the punitive damages award to $2 million, a small fraction of the amount sought by Oak, on the ground that Oak had exercised little or no oversight in contravention of its fiduciary obligations to its investors and, therefore, did not discover the fraud for almost eleven years despite little effort by Ahmed to conceal aspects of his fraudulent scheme.

E

Postarbitration Proceedings

Ahmed filed an application in the Superior Court to vacate the award; see General Statutes § 52-418; and

Oak filed a motion to confirm the award. See General Statutes § 52-417. Ahmed claimed that the court should vacate the award on each of the statutory grounds in § 52-418 (a), the corresponding provisions in Delaware statutes, and the corresponding provisions in the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. See 9 U.S.C. § 10 (2018). Ahmed also claimed that the award violated public policy, in that the arbitrator effectively decided the matter on an ex parte basis, denying Ahmed any opportunity to refute Oak's allegations and any semblance of fairness or due process.

The trial court denied Ahmed's application to vacate the award and granted Oak's motion to confirm the award. The court expressed concerns about whether the criminal action that preceded Ahmed's flight from the United States was related to the arbitration, justifying the application of the fugitive disentitlement doctrine, and whether the doctrine, if applicable, could be applied in such a "draconian" manner: to preclude not only efforts to obtain affirmative relief but also efforts to defend against Oak's claims in the absence of a showing of necessity.

The trial court, however, cited several impediments to vacating the award. First, it pointed to Ahmed's failure to present any credible evidence proving his purported inability to return to this country; see footnote 4 of this opinion; and questioned why any such inability, if it existed, should not be considered a problem of his own making due to his initial, illegal departure from this country. It also noted that the fugitive disentitlement doctrine, although most often applied in criminal litigation, is a recognized exception to the opportunity to be heard in both criminal and civil contexts. The court concluded that "[t]he orders may have been extreme, and approached [the] outer limits of reasonable application, but the court cannot conclude that limits were crossed, under the circumstances presented." The court particularly emphasized the deference afforded to an

arbitrator's contractual interpretation and inferred from the AAA's posthearing decision rejecting Ahmed's motion to disqualify the arbitrator that the arbitrator's interpretation of the governing principles was within proper bounds.

Specifically with regard to the damages hearing, the trial court observed that the arbitrator's confidentiality ruling had allowed Oak to shield every matter of substance from Ahmed, including information that plainly was not confidential (e.g., information about Ahmed's compensation). Nonetheless, the arbitrator could have discredited Ahmed's excuses for his inability to participate in the proceedings. Consequently, the court viewed Ahmed's failure to participate in the damages hearing remotely, as he had been invited to do so and as had become customary during the pandemic—to assert objections, present evidence, and cross-examine Oak's witnesses to the extent he would have been permitted to do so, as volitional and, therefore, a waiver of certain claims. This appeal followed.

II

Well settled principles guide our review. "[Judicial] review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 531, 205 A.3d 552 (2019).

Specifically, "[u]nder an unrestricted submission, the [arbitrator's] decision is considered final and binding; thus the courts will not review the evidence considered by the [arbitrator] nor will they review the award for errors of law or fact. . . . A submission is deemed restricted only if the agreement contains express lan-

Ahmed *v.* Oak Management Corp.

guage restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review.'' (Internal quotation marks omitted.) Id. When the agreement contains no such restrictions, as in the present case, ''[a] court sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it.'' (Internal quotation marks omitted.) *Wachovia Securities*, *LLC* v. *Brand*, 671 F.3d 472, 478 (4th Cir. 2012).

''We have, however, recognized certain grounds for vacating an award even when the parties have committed a particular question to the authority of an arbitrator, including that: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418.'' (Internal quotation marks omitted.) *AFSCME*, *Council 4*, *Local 1303-325* v. *Westbrook*, 309 Conn. 767, 777, 75 A.3d 1 (2013). This court reviews a trial court's decision de novo when that decision addresses whether an arbitration award violates the proscriptions § 52-418 or a clear public policy. See, e.g., *Bridgeport* v. *Kasper Group*, *Inc.*, 278 Conn. 466, 475, 899 A.2d 523 (2006). We do so mindful that the arbitrator's decision itself is subject to a form of de novo review. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005); *Schoonmaker* v. *Cummings & Lockwood of Connecticut*, *P.C.*, 252 Conn. 416, 431–32, 747 A.2d 1017 (2000).

As the analysis that follows makes clear, what this de novo review encompasses depends on which ground for vacating an award is at issue. Irrespective of which ground is at issue, however, a court must afford substantial deference to the arbitrator's interpretation of the scope and meaning of the agreement's terms. See *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 432. ''Because the parties bargained for the arbitrator's construction of their agreement, an

arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." (Internal quotation marks omitted.) *Oxford Health Plans, LLC* v. *Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013); see also *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780–81. Further, we must bear in mind when reviewing the award and determining whether the arbitrator " 'even arguably' " construed or applied the contract; *Oxford Health Plans, LLC* v. *Sutter*, supra, 569; that, absent a statute or contractual provision providing to the contrary, "no findings of fact or conclusions of law are required." (Internal quotation marks omitted.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 190–91, 530 A.2d 171 (1987). In fact, "[a]n explanation of the means by which [the arbitrator] reached the award is not needed, and, in fact, has been held to be superfluous." Id., 191; see also *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 585, 440 A.2d 774 (1981).

We now turn to the present case. Ahmed claims on appeal that we must order the vacatur of the award because (1) the arbitrator exceeded his authority in violation of § 52-418 (a) (4) by violating his due process rights to a full and fair hearing and by applying the fugitive disentitlement doctrine, (2) the arbitrator declined to hear pertinent and material evidence and engaged in prejudicial misconduct in violation of § 52-418 (a) (3), (3) the award violated public policy—fundamental fairness in arbitral proceedings, i.e., the right to present evidence, and the upholding of the integrity of the arbitration process, and (4) the award violated the FAA on grounds similar to those in § 52-418 (a) (3) and (4).

Two predominant themes emerge from Ahmed's claims: first, that he was deprived of any semblance of the fair hearing of his defenses and counterclaims to which he

Ahmed *v.* Oak Management Corp.

was entitled (violation of "due process right"),[10] and, second, that the arbitrator could not, as a matter of law, apply the fugitive disentitlement doctrine to deprive him of that right. Before turning to the specific legal grounds he invokes for vacatur of the award, it is important to dispel certain misimpressions that may arise from the dual themes of Ahmed's claims.

First, the record belies Ahmed's characterization of the arbitrator's actions as completely depriving him of any ability to participate in the proceedings. For example, the arbitrator did, in fact, consider Ahmed's motion to dismiss and his motion for summary judgment, rejecting them on the merits. The arbitrator's decision to limit punitive damages because of Oak's contributory negligence, i.e., Oak's failure to exercise reasonable oversight that could have revealed aspects of Ahmed's fraudulent activities, manifests that the arbitrator considered the arguments and supporting exhibits in Ahmed's motions. The record does not establish that the arbitrator precluded Ahmed from participating in the *damages* hearing. In fact, Ahmed's requests to postpone that hearing, as well as his provision of exhibits to Oak that he intended to submit at that hearing,

---

[10] We assume that Ahmed uses the term "due process" colloquially, as a proxy for fundamental fairness. *Constitutional* due process rights do not apply to a voluntary arbitration between private parties, notwithstanding that a court confirms the award. See, e.g., *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 641–52, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 427 n.5; see also *Davis* v. *Prudential Securities, Inc.*, 59 F.3d 1186, 1191–92 (11th Cir. 1995). Nonetheless, the grounds for vacating an award embody general principles of fundamental fairness, which sometimes are referred to as due process. See 21 R. Lord, Williston on Contracts (4th Ed. 2001) § 57:84, pp. 491–92; see also *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 648, 165 A.3d 1228 (2017) ("a challenge to an arbitration award under § 52-418 (a) (3) is limited to whether a party was 'deprived of a full and fair hearing before the arbitration panel' ").

Ahmed *v.* Oak Management Corp.

clearly demonstrate that Ahmed himself did not interpret the arbitrator's disentitlement order at the liability stage to bar his participation at the damages hearing.[11]

We agree with the trial court that, because the arbitrator could have discredited Ahmed's claims that ill health prevented his attendance, Ahmed waived his right to participate in the damages hearing by failing to appear after the denial of his postponement request. See 16D C.J.S. 37, Constitutional Law § 1736 (2005) ("[T]he due process rights to notice and hearing prior to judgment are subject to waiver. An employer who fails to attend an arbitration of grievances proceeding is not deprived of due process by the ex parte arbitration . . . ." (Footnotes omitted.)); see also *Youngs* v. *Haugh*, Docket No. 4:08-CV-528-Y, 2009 WL 701013, *5 (N.D. Tex. March 18, 2009) (denying defendants' motion to compel arbitration, filed in response to action commenced by plaintiffs, on ground that defendants' refusal to participate in arbitration previously initiated by plaintiffs constituted default or waiver); *UniFirst Corp.* v. *Stronger Collision Center, LLC*, 336 So. 3d 1283, 1286 (Fla. App. 2022), review denied, Florida Supreme Court, Docket No. SC22-683 (June 20, 2022); *UniFirst Corp.* v. *Stronger Collision Center, LLC*, supra, 1286 n.5 (when party elected not to participate in arbitration after receiving demand, arbitration was governed by AAA rule permit-

_____

[11] Ahmed characterizes the sentence in the arbitrator's order stating that Ahmed, "by reason of the [common-law] doctrine of fugitive disentitlement . . . having been previously applied, was not present and did not participate," as an acknowledgment that the disentitlement order barred his participation in the damages hearing. In addition to the fact that Ahmed's conduct after the issuance of that order manifested a different interpretation of the order, Ahmed does not read the sentence contextually. Immediately preceding the sentence quoted, the order stated that Ahmed "ha[d] failed to appear [at the damages hearing] after due notice by mail in accordance with the [r]ules of the [AAA] . . . ." We are bound to give effect to both statements and therefore interpret the latter to reflect the arbitrator's assumption that, because of the doctrine's application at the liability phase, Ahmed declined to participate in the damages hearing.

ting "the arbitration [to] proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement" (internal quotation marks omitted)).[12]

Although Ahmed contends on appeal that his participation would have been futile because Oak's unilateral confidentiality determination had effectively shielded all of Oak's evidence from him, we are not prepared to arrive at such a speculative conclusion. If he had participated, Ahmed could have requested independent review of the evidence, as he managed to do in the SEC civil fraud action, even while purportedly in India. See *Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 3169059, *1 (District Court ordered magistrate judge, following Ahmed's motion, to conduct "an independent review . . . to compare redacted and unredacted transcripts [of deposition of Oak officer] to determine whether the portions redacted as confidential [were] in fact confidential" (internal quotation marks omitted)). Insofar as Ahmed contends that his failure to participate in the hearing is immaterial because he raised objections to that hearing to the AAA, *after the hearings had been declared closed*, he has provided us with no authority to support that proposition. See generally 21 R. Lord, Williston on Contracts (4th Ed. 2001) § 57:94, pp. 522–24 (explaining when arbitration may proceed when party who has been given due notice is absent).

Second, it is important to make clear that we address only claims that Ahmed both distinctly raised before the trial court and has adequately raised and briefed in this court. For example, although Ahmed raised and extensively briefed in the trial court a claim that the

---

[12] The parties' agreement in the present case incorporates the same rule; see AAA Rule R-31; and Ahmed does not direct us to any Delaware law that expressly provides to the contrary.

Ahmed *v.* Oak Management Corp.

arbitrator made his award in manifest disregard of the law by dismissing his claims and counterclaims under the fugitive disentitlement doctrine, his appellate brief neither refers to manifest disregard nor cites it as an exceptionally deferential standard of review. See *Blondeau* v. *Baltierra*, 337 Conn. 127, 161–62, 167–68, 252 A.3d 317 (2020); see also *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 251 n.7, 117 A.3d 470 (2015) (manifest disregard of law is "a claim on which litigants have yet to prevail in our courts"). We therefore consider this claim abandoned. Having chosen to abandon the claim, Ahmed cannot circumvent the onerous manifest disregard standard simply by labeling a claim of legal error as some other ground for vacating the award. Cf. *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 788 ("[A] party [challenging] an arbitral award may not succeed in receiving de novo review merely by labeling its challenge as falling within the public policy exception to the normal rule of deference. The substance, not the form, of the challenge will govern." (Internal quotation marks omitted.)). Further, as our discussion will demonstrate, we have no occasion to consider whether the facts of the present case justified the arbitrator's application of the fugitive disentitlement doctrine or the extent to which that doctrine was properly applied.[13]

---

[13] The fact that we do not reach the question of whether the federally created doctrine of fugitive disentitlement applies to arbitration proceedings is not intended to suggest that we endorse the federal position as to the application of the doctrine to judicial proceedings generally. This court previously has applied the doctrine only in the limited context of a dismissal of a criminal defendant's appeal from the judgment of conviction; we have never suggested that the doctrine applies to civil appeals or to trial proceedings. See *State* v. *Brabham*, 301 Conn. 376, 381–87, 21 A.3d 800 (2011) (extending prior case law permitting discretionary dismissal of fugitive criminal defendant's appeal to cases in which defendant has been returned to custody when his criminal appeal is heard but his flight has undermined integrity, efficiency or dignity of appellate process, including potential remedies in event of successful appeal).

Ahmed *v.* Oak Management Corp.

The dissent takes a different tack. It takes the view that we should interpret Ahmed's claims more expansively, to glean their essence, informed not only by what Ahmed actually argues in his brief but by reading between the lines and even looking beyond the brief if necessary. For example, the dissent posits that Ahmed's statement that the arbitrator exceeded his authority by depriving Ahmed of his procedural rights under the AAA rules is "broad enough for us to consider *all of the AAA rules that the arbitrator's conduct may have violated*"; (emphasis added); and, thus, we should not limit our review to the specific rules that Ahmed actually cites and analyzes in his brief.[14] Similarly, this expansive reading allows the dissent to elevate a single sentence footnote in Ahmed's brief, a statement of fact unadorned by legal authority or analysis, to an independent ground for vacatur, which is a central feature of the dissent.[15] See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 804–805, 256 A.3d 655 (2021) (issue was inadequately briefed when plaintiff provided neither citation to any legal authority nor meaningful analysis). Oak, unsurprisingly, did not read between the lines of Ahmed's brief and therefore did not address these expansively interpreted arguments in its brief. Under similar circumstances, we would not afford such a liberal interpretation to even a self-represented litigant, a status that Ahmed does not hold in this appeal.

[14] Of course, we would never countenance or consider a claim that a trial court's order violated "the Practice Book" without the appellant's identification of the specific provisions implicated by the claim.

[15] The argument section of Ahmed's brief titled, "The Arbitrator Precluded [Ahmed] from Defending Himself, Counterclaiming, and Seeing the Evidence Against Him," includes a footnote providing: "What's more, the arbitrator never even gave [Ahmed] a chance to respond to Oak's motion requesting disentitlement; despite setting a due date of June 8, 2020, for [Ahmed's] opposition, the arbitrator granted Oak's motion on May 22, 2020." Ahmed does not raise this omission as a basis for vacatur in his brief to this court, and we therefore do not consider whether he could have prevailed had he done so. See footnote 31 of this opinion.

Ahmed *v.* Oak Management Corp.

See, e.g., *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 75, 23 A.3d 668 (2011) ("our liberal policy toward [self-represented] parties is severely curtailed in cases [when] it interferes with the rights of other parties" (internal quotation marks omitted)). Although we have responded to a select few of the numerous arguments the dissent poses that Ahmed has not made, our doing so does not cure the lack of notice to Oak.

Making arguments that a litigant does not make for himself is particularly unfitting when a court reviews an arbitration award. As we discuss in greater detail in the sections that follow, we afford an unparalleled level of deference to the arbitrator and construe the grounds for vacatur quite narrowly. "In effect" de novo review is quite different from the de novo review applied in judicial review of cases that originate in our trial courts. In such cases, we may be more flexible in distinguishing between an unraised claim, for which review is sometimes, but not always, improper, and an unraised legal argument in support of a claim that has been raised, for which review may be proper. See, e.g., *Meribear Productions, Inc.* v. *Frank*, 340 Conn. 711, 732, 265 A.3d 870 (2021).

Arbitration is different. The parties did not bargain for a black-robed decision maker in the first instance, let alone for appellate jurists doggedly scouring the record, the contract, and the AAA rules to uncover a basis for vacatur that the plaintiff does not assert for himself. See *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 51, 757 A.2d 501 (2000) (Declining to apply certain rules that are traditionally applied in civil actions and administrative proceedings, and stating: "This differentiation . . . is premised on the notion that, because arbitration is essentially a private ordering scheme for resolving disputes, those authorities should not be extended to that private scheme. Voluntary arbitration is a method by which parties freely determine

Ahmed *v.* Oak Management Corp.

that their disputes will be resolved, at least in the first instance, not by public officials such as judges or administrators, but by arbitrators.''); see also *Blondeau* v. *Baltierra*, supra, 337 Conn. 161 ("As an essential component of [the parties'] choice [to arbitrate their dispute], they have agreed to bypass the usual adjudicative apparatus, including its conventional appellate features, for the advantages that accompany private arbitration. . . . Review by a judicial authority is not forfeited entirely, but it is conducted under a different and far less rigorous level of scrutiny.'').

Having clarified the issues and circumstances before us, we turn to the specific grounds Ahmed has raised on appeal for vacating the award. We note that, although the trial court largely eschewed crediting either of the parties' diametrically opposed characterizations of Ahmed's actions and motivations in assessing these grounds, consistent with the deferential standard of review applied in this context, we interpret the evidence in the light most favorable to supporting the award.

A

We begin with Ahmed's claim that the arbitrator exceeded his authority in violation of § 52-418 (a) (4) because AAA rules and Delaware law both require an arbitrator to provide parties with a full and fair hearing; see Del. Code Ann. tit. 10, § 5706 (2) (2013);[16] AAA Rule

[16] Section 5706 of title 10 of the Delaware Code provides in relevant part: "Unless otherwise provided by the agreement:

"(1) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served . . . . The arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear. . . .

"(2) The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing. . . .'' Del. Code Ann. tit. 10, § 5706 (2013).

The dissent addresses this Delaware statute in connection with its arguments that the award satisfied the ground for vacatur under § 52-418 (3), the ground we address in part II of this opinion. For the reasons contained in part II of this opinion, this Delaware statute has no bearing on our analysis of that ground. Insofar as the dissent appears to treat the arbitrator's

Ahmed *v.* Oak Management Corp.

R-32 (a); and arbitrators have no authority to apply the fugitive disentitlement doctrine to abrogate those rights. Specifically, Ahmed contends that the arbitrator improperly relied on AAA Rule R-47 (a) for authority to apply the doctrine. That subsection provides: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." AAA Rule R-47 (a). Ahmed claims that the arbitrator failed to recognize that the AAA rules require not only that the remedy or relief must be "just and equitable"—the part of the rule cited in the arbitrator's order—but that the remedy or relief must be "within the scope of the agreement of the parties . . . ." Id. Ahmed contends that the parties' agreement must expressly authorize the relief to come "within the scope of the . . . agreement . . . ."[17] Id. Because no express language of the agree-

purported violation of that statute as an independent basis to vacate the award, there is no authority permitting vacatur on grounds other than those prescribed by the statutes or the common law governing vacatur. Although the *arbitration* was governed by Delaware law, the procedures for review of the award and the grounds for vacatur are those provided under Connecticut and federal arbitration law. Ahmed does not contend otherwise.

[17] We note that Ahmed's authority argument focuses only on one part of AAA Rule R-47 (a) cited by the arbitrator—"within the scope of the agreement of the parties . . . ." Ahmed makes no claim that the "equitable" doctrine of fugitive disentitlement; see footnote 1 of this opinion; is not an equitable remedy or equitable relief. Relatedly, although Ahmed mentions in his brief to this court the United States Supreme Court's reference to the "sanction of disentitlement" in his discussion of *Degen* v. *United States*, 517 U.S. 820, 828, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996), he does not characterize the doctrine as a sanction that would be governed by the conditions for imposing sanctions contained in AAA Rule R-58, which we quote in full in footnote 19 of this opinion. See *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 246, 113 S. Ct. 1199, 122 L. Ed. 2d 581 (1993) (referring to doctrine as sanction); *Mastro* v. *Rigby*, 764 F.3d 1090, 1096 (9th Cir. 2014) (same); *United States* v. *Salcido*, 475 Fed. Appx. 788, 789 (2d Cir.) (same), cert. denied, 568 U.S. 885, 133 S. Ct. 299, 184 L. Ed. 2d 153 (2012). But see *Martin* v. *Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008) (characterizing disentitlement as " 'tantamount to waiver or abandonment' "); *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10572640,

Ahmed *v.* Oak Management Corp.

ment authorizes application of the fugitive disentitlement doctrine, Ahmed claims that its application is contrary to laws and rules incorporated into the arbitration agreement. We conclude that Ahmed's claim falters on its fundamental premise.

The legal principles governing our review are well settled. "[A] claim that the arbitrators have exceeded their powers may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the arbitrators manifestly disregarded the law." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 155. As we previously indicated, Ahmed does not assert a claim of manifest disregard of the law on appeal.

"If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission

*1 (characterizing disentitlement as equitable remedy); *United States* v. *Nabepanha*, 200 F.R.D. 480, 483 (S.D. Fla. 2001) (same); *State* v. *Brabham*, 301 Conn. 376, 379, 21 A.3d 800 (2011) (calling fugitive disentitlement doctrine common-law rule). As we explain in response to the dissent, we have no occasion to consider whether characterizing the arbitrator's order as a sanction would make any difference in the present case. Cf. *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 763 (Minn. 2014) (punitive sanction can constitute remedy or relief).

We also observe that, insofar as Ahmed's argument focuses on the phrase, "within the scope of the [arbitration] agreement," he makes no claim that this phrase connotes that the equitable relief must be afforded in connection with the arbitrable claims themselves and the factual allegations supporting them, but not as relief for conduct unconnected to the merits of the claims. Cf. *USX Corp.* v. *West*, 781 S.W.2d 453, 455 (Tex. App. 1989) (Natural gas buyer's "claim for punitive damages against [the seller] arises from [the seller's] alleged[ly] wrongful acts in effecting a breach of the contract and is within the scope of the contractual provision requiring arbitration; therefore, the issue of punitive damages is part of the 'controversy' before the arbitrator. . . . [See AAA Rule R-43 (September 1, 1988) ('[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . .]')." (Citation omitted.)).

Ahmed *v.* Oak Management Corp.

to arbitration.'' (Internal quotation marks omitted.) *Lemma* v. *York & Chapel, Corp.*, 204 Conn. App. 471, 494, 254 A.3d 1020 (2021). ''The standard for reviewing a claim that the award does not conform to the submission requires what we have termed in effect, de novo judicial review. . . . The de novo label in this context means something very different from typical de novo review because review under this standard and in this setting is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission. . . . In making this determination, *the court may not engage in fact-finding by providing an independent interpretation of the contract,* but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written.'' (Citation omitted; emphasis added; internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 155.

The challenge for a reviewing court is to put aside its judicial sensibilities because ''the question is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.'' (Internal quotation marks omitted.) *Brotherhood of Locomotive Engineers & Trainmen, General Committee of Adjustment, Central Conference* v. *Union Pacific Railroad Co.*, 719 F.3d 801, 803 (7th Cir. 2013). ''[M]isinterpretation of contractual language, no matter how clear, is within the arbitrator's powers; only a decision to ignore or supersede language

Ahmed *v.* Oak Management Corp.

conceded to be binding allows a court to vacate the award.'' (Internal quotation marks omitted.) *United Food & Commercial Workers, Local 1546* v. *Illinois-American Water Co.*, 569 F.3d 750, 755 (7th Cir. 2009); cf. *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780 (''It is not [the court's] role to determine whether the arbitrator's interpretation of the collective bargaining agreement was correct. It is enough . . . that such interpretation was a good faith effort to interpret the terms of the collective bargaining agreement.'' (Internal quotation marks omitted.)). ''[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the [parties' agreement]. . . . In such cases, the [United States] Supreme Court has said that the arbitrator is dispens[ing] his own brand of industrial justice. [*United Steelworkers of America* v.] *Enterprise Wheel & Car Corp.*, 363 U.S. [593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)].'' (Citation omitted; emphasis omitted; internal quotation marks omitted.) *United Food & Commercial Workers, Local 1546* v. *Illinois-American Water Co.*, supra, 755; see also *Island Creek Coal Co.* v. *District 28, United Mine Workers of America*, 29 F.3d 126, 129 (4th Cir.) (''[a]n award may be overturned only if the arbitrator must have based his award on his own personal notions of right and wrong, for only then does the award fail to draw its essence from the collective bargaining agreement'' (internal quotation marks omitted)), cert. denied, 513 U.S. 1019, 115 S. Ct. 583, 130 L. Ed. 2d 497 (1994).

As we previously explained, Ahmed's excess of authority claim in the present case rests on the premise that equitable relief is ''within the scope of the agreement of the parties'' under AAA Rule R-47 (a) only if the agreement *expressly authorizes* that relief. This same provision is routinely incorporated into contrac-

Ahmed *v.* Oak Management Corp.

tual agreements to arbitrate. Some courts have adopted Ahmed's interpretation; see, e.g., *InterChem Asia 2000 Pte. Ltd.* v. *Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 357–59 (S.D.N.Y. 2005); *Eberle* v. *BMCA Insulation Products, Inc.*, Docket No. 95 Civ. 10378 (SAS), 1996 WL 337262, *3 (S.D.N.Y. June 19, 1996); see also *Beacon Towers Condominium Trust* v. *Alex*, 473 Mass. 472, 474, 476–77, 42 N.E.3d 1144 (2016) (attorney's fees were not "within the scope of the arbitration agreement" when agreement also provided that such fees were permitted when " 'authorized by law' " and contract provided no express authority for such fees); but many other courts have interpreted this provision to permit relief or remedies in the absence of an express *limitation.*[18] See, e.g., *Wisconsin Automated Machinery Corp.*

[18] The dissent contends that AAA Rule R-47 (a) "is concerned only with the type of relief that the arbitrator can include in the final award" and points to the fact that the cases we have cited all involve the question of authority to award attorney's fees or punitive damages, or to order specific performance. Ahmed has not made this argument; see footnote 17 of this opinion; but, in any event, AAA Rule R-47 (b) grants the arbitrator express authority to make interim orders and interlocutory decisions, and Rule R-47 (a) has been cited in support of such orders. See, e.g., *Superadio Ltd. Partnership* v. *Winstar Radio Productions, LLC*, 446 Mass. 330, 337–39, 844 N.E.2d 246 (2006); id., 338 (arbitrator did not exceed authority by awarding monetary sanction for discovery violation under rule mirroring AAA Rule R-47 (a) and rule authorizing arbitrator to resolve discovery disputes, noting absence of "language restricting the application of the broad remedial relief of Rule [R-45] (a) [now Rule R-47 (a)] to final awards (and precluding the grant of broad remedial relief to interim awards)"); see also *Clark* v. *Garratt & Bachand, P.C.*, Docket No. 344676, 2019 WL 3941493, *3 (Mich. App. August 20, 2019) (assuming arbitrator would have authority under AAA Rule R-47 (a) to award attorney's fees as sanction for frivolous pleading); *Minerals Development & Supply Co.* v. *Superior Silica Sands, LLC*, Docket No. 2012AP2328, 2013 WL 5943132, *9 (Wis. App. November 7, 2013) (decision without published opinion, 352 Wis. 2d 246, 841 N.W.2d 580) (relying on language of AAA Rule R-47 (a) as authority for imposing monetary sanction against party for making frivolous arguments), review denied, 354 Wis. 2d 862, 848 N.W.2d 858, cert. denied, 574 U.S. 873, 135 S. Ct. 246, 190 L. Ed. 2d 137 (2014). But even if the dissent's interpretation of AAA Rule R-47 (a) were correct, under well established arbitration principles, any misinterpretation by the arbitrator would not justify vacating the award.

Ahmed *v.* Oak Management Corp.

v. *Diehl Woodworking Machinery, Inc.*, Docket No. 07 C 6840, 2008 WL 4889012, *4–5 (N.D. Ill. August 7, 2008); *In re Arbitration Between Prudential-Bache Securities, Inc. & Depew*, 814 F. Supp. 1081, 1083–84 (M.D. Fla. 1993); *Willoughby Roofing & Supply Co.* v. *Kajima International, Inc.*, 598 F. Supp. 353, 357 (N.D. Ala. 1984), aff'd, 776 F.2d 269 (11th Cir. 1985); see also *Schmidt* v. *Schmidt*, Docket No. 1 CA-CV 12-0701, 2014 WL 3882178, *6–7 (Ariz. App. August 5, 2014); *Winkelman* v. *Kraft Foods, Inc.*, 279 Wis. 2d 335, 342–43, 347, 693 N.W.2d 756 (App.), review denied, 282 Wis. 2d 720, 700 N.W.2d 272 (2005). This is so even when the agreement provides that a particular state's law shall govern and that state's law bars awarding the relief. See *Bonar* v. *Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1386–87 (11th Cir. 1988).

We conclude from our review of Delaware law that the courts of that state would follow the latter approach. See *Malekzadeh* v. *Wyshock*, 611 A.2d 18, 22 (Del. Ch. 1992) (In declining to vacate an award that ordered relief not expressly authorized by the arbitration agreement, the court stated: "[T]he United States Supreme Court has held that the award of relief not previously conceived of by the parties is not grounds for vacating an [a]rbitrator's award. . . . An arbitration award is deemed to be outside the scope of the parties' agreement only when it manifests a clear infidelity to the [a]rbitrator's obligation of drawing the essence of the award from the [underlying contract]." (Citations omitted; internal quotation marks omitted.)). We note that Delaware courts recognize the fugitive disentitlement doctrine; see, e.g., *Cooper ex rel. Frazier* v. *Villaburdi*, Docket No. Civ.A. 00C-08-174JEB, 2001 WL 1198933, *2 (Del. Super. October 2, 2001) (noting that "principles of deference counsel that the [d]octrine of [f]ugitive [d]isentitlement must be used reasonably and with restraint" and concluding that it was unnecessary to

Ahmed *v.* Oak Management Corp.

consider whether dismissal under doctrine was appropriate because court was granting motion to dismiss), aff'd sub nom. *Cooper* v. *Villaburdi*, Docket No. 550, 2001, 2002 WL 442398 (Del. March 19, 2002) (decision without published opinion, 793 A.2d 310); see also *Redden* v. *State*, 418 A.2d 996, 997 (Del. 1980) ("[a]n escapee has no right to appellate procedures while he remains a fugitive"); and we are unaware of any case in which a Delaware court (or any court, for that matter) has expressly barred the application of the fugitive disentitlement doctrine to arbitration. Insofar as Ahmed's position is that the arbitrator *misapplied* the doctrine as a matter of law because Delaware courts would reach a different conclusion as to whether or to what extent the doctrine should apply if they were confronted with the present circumstances, he cannot prevail even if he is correct. As we previously explained, vacatur cannot be based on mere legal error but only on manifest disregard of the law in violation of § 52-418 (a) (4). See *McCann* v. *Dept. of Environmental Protection*, 288 Conn. 203, 220, 952 A.2d 43 (2008); id., 214–15 ("arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules" (internal quotation marks omitted)). As we also previously noted, Ahmed does not claim that the arbitrator's actions meet this onerous standard.

The fact that the agreement does not refer explicitly to this doctrine is immaterial. The question is not whether the parties specifically anticipated application of the fugitive disentitlement doctrine in name but whether the arbitrator drew the essence of the equitable remedy from the underlying contract. See *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, supra, 363 U.S. 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining

Ahmed *v.* Oak Management Corp.

agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. . . . The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.''); *Phoenix Newspapers, Inc.* v. *Phoenix Mailers Union Local 752, International Brotherhood of Teamsters*, 989 F.2d 1077, 1082 (9th Cir. 1993) (''[a]s long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute'' (internal quotation marks omitted)).

Two points warrant emphasis. The first is that ''arbitrators are generally afforded greater flexibility in fashioning remedies than are courts''; *Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015); and no provision in the parties' agreement explicitly restricts the arbitrator's remedies to fewer than those available to a court. The second is that the agreement is intended to promote fairness to *both* parties. The sanctions rule incorporated into the agreement, although not drafted with the present circumstances specifically in mind, recognizes that a party might engage in conduct that justifies the arbitrator's making orders that impair or even abrogate that party's right to present his case.[19] This provision reflects the reality

[19] AAA Rule R-58 provides: ''(a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

''(b) The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.''

We note that, although the trial court analogized the arbitrator's disentitlement order in the present case to a default judgment rendered by a court,

Ahmed *v.* Oak Management Corp.

that treating *both* parties fairly requires weighing competing interests. Whether the arbitrator struck the proper balance in the present case, crafting orders that benefited Oak, the party that was timely prepared to present its case in the agreed on forum, to the detriment of Ahmed, the party who flouted the law and then attempted to use his absence to delay the proceedings, is not a question of exceeding authority but of exercising discretion. See, e.g., *Bano* v. *Union Carbide Corp.*, 273 F.3d 120, 125 (2d Cir. 2001) ("[w]e review a district court's determination whether to apply the fugitive disentitlement doctrine for abuse of discretion"); see also *Galeas Figueroa* v. *Attorney General*, 998 F.3d 77, 85 (3d Cir. 2021) ("[d]ismissal [of appeal] under the fugitive disentitlement doctrine remains discretionary"); *Maydak* v. *United States Dept. of Education*, 150 Fed. Appx. 136, 138 (3d Cir. 2005) (dismissal of plaintiff's action pursuant to Freedom of Information Act, 5 U.S.C. § 552 et seq., under fugitive disentitlement doctrine "was not an abuse of discretion"). Although it is not for a reviewing court to determine whether the arbitrator struck the proper balance, we note that the arbitrator reasonably could have considered Ahmed's failure to satisfy conditions that would have allowed his full participation through counsel. Cf. *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2016 WL 10572640, *1 (because Ahmed was represented by counsel in civil insider trading action, court's protective order authorized counsel to have access to confidential materials and to discuss those materials with Ahmed). The District Court declined to grant Ahmed's request to unfreeze assets for the purpose of retaining arbitration counsel because Ahmed failed to provide the informa-

Ahmed does not claim that the arbitrator rendered a default *award*, as prohibited by AAA Rule R-58 (a). A default award appears to be one rendered in the absence of evidence, whereas Oak submitted evidence to the arbitrator in support of its recovery in the present case.

Ahmed *v.* Oak Management Corp.

tion that the court required to support his request.[20] Moreover, the form and substance of Ahmed's filings in that action and in the arbitration reasonably could have raised doubts as to whether he in fact lacked the services of counsel.

In light of these facts, we cannot conclude that, in invoking the fugitive disentitlement doctrine, the arbitrator did not draw the essence of his award from the parties' arbitration agreement, including the AAA rules incorporated into the agreement. The test is whether he was " 'even arguably' " construing the contract. *Oxford Health Plans, LLC* v. *Sutter*, supra, 569 U.S. 569. The fact that his award (and the underlying disentitlement order) may not have recited every provision on which he relied or explained how his interpretation authorized his actions in light of the facts is not just unnecessary but superfluous. See *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 190–91; 2 M. Domke on Commercial Arbitration (3d Ed. 2003 & Supp. 2009) § 34:7, pp. 34-18 through 34-25.

"Given our limited role in reviewing arbitral decisions, we conclude that the [arbitrator did not exceed his authority]. The arbitrator did not disregard the con-

---

[20] To obtain the release of frozen funds to retain arbitration counsel, the District Court had required that Ahmed provide (1) documentation to prove his inability to retain counsel without a release of funds from the receivership estate, (2) the identity of legal counsel he intended to retain, and (3) an estimate by counsel of the cost of representing Ahmed in the arbitration. See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2020 WL 4333570, *8; see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2021 WL 877501, *2 (D. Conn. February 5, 2021). After initially failing to satisfy these conditions in connection with his request for a release of assets to obtain arbitration counsel, and after obtaining a waiver of fees and costs to bring the present application to vacate the arbitrator's award, Ahmed complied sufficiently with these conditions, and the District Court released assets to allow him to hire counsel to represent him in connection with proceedings to vacate the award. See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 2021 WL 877501, *2.

348 Conn. 152 OCTOBER, 2023 195

Ahmed *v.* Oak Management Corp.

tractual language and dispense his own brand of industrial justice, nor did he exceed his authority in rendering his decision. Instead, the arbitrator confronted a situation that was not expressly contemplated by the parties, interpreted the agreement, and reached a conclusion.'' *United Food & Commercial Workers*, *Local 1546* v. *Illinois-American Water Co.*, supra, 569 F.3d 755. Mindful of the unusual and challenging circumstances facing the arbitrator, and precipitated by Ahmed's own actions, we cannot conclude that the award *necessarily* falls outside the scope of the arbitrator's authority. See, e.g., *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (Second Circuit has ''consistently accorded the narrowest of readings to [the exceeded powers] provision of [federal arbitration] law . . . in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation'' (citation omitted; internal quotation marks omitted)).

The dissent concludes otherwise, contending that AAA Rule R-47 (a) does not provide authority to issue the disentitlement order and pointing to two rules not cited by the arbitrator as evidence that the arbitrator exceeded his authority by relying on Rule R-47. Specifically, the dissent contends that the arbitrator's disentitlement order (1) violated AAA Rule R-32 (a), which requires that ''the parties are treated with equality'' and that each party ''is given a fair opportunity to present its case,'' and (2) contravened AAA Rule R-58, which, in the dissent's view, permitted the arbitrator to issue a sanction in only two circumstances (violation of an AAA rule or an order of the arbitrator), neither of which, according to the dissent, provided the basis for the arbitrator's order in the present case. The dissent's reliance on these rules is misplaced.

Ahmed *v.* Oak Management Corp.

AAA Rule R-32, titled "Conduct of Proceedings," simply prescribes the procedures that generally govern arbitration. Although this rule acknowledges each party's right to present its case, it does not provide that these rights are inviolate and cannot be waived by engaging in conduct injurious to the fairness of the proceedings and the rights of the other party. Rather, it rests on the presumption that a party has not, by act or omission, engaged in conduct that justifies the impairment of these rights. Cf. *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, supra, 564 F.3d 84, 88 (The arbitrators did not exceed their authority by ordering one party to pay the other party's arbitration and attorney's fees as a sanction despite a provision in arbitration agreement stating that each party " 'shall bear' " the expenses of their own arbitrator and their own attorneys because that provision "is fairly understood to reflect the parties' agreement as to how fees are to be borne, regardless of the arbitration's outcome, in the expected context of good faith dealings. . . . Nothing in the section, however, signals the parties' intent to limit the arbitrators' inherent authority to sanction bad faith participation in the arbitration." (Citation omitted; emphasis omitted.)). Other AAA rules incorporated into the agreement reflect this distinction, providing the arbitrator with flexible tools to meet conditions that may arise. See AAA Rule R-23 ("Enforcement Powers of the Arbitrator") ("[t]he arbitrator shall have the authority to issue any orders necessary . . . to otherwise achieve a fair, efficient and economical resolution of the case"); AAA Rule R-31 ("Arbitration in the Absence of a Party or Representative") ("[u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement"); AAA Rule R-58 ("Sanctions") (authorizing sanctions for party's failure to comply with its obligations under AAA rules or arbitrator's order,

Ahmed *v.* Oak Management Corp.

including limiting party's participation and adverse determination of issues); see also *AmeriCredit Financial Services, Inc.* v. *Oxford Management Services*, 627 F. Supp. 2d 85, 95–96 (E.D.N.Y. 2008) (arbitrator's dismissal of counterclaim as sanction for defendant's destruction of evidence was authorized under broad grant of authority in arbitration agreement to resolve any dispute arising out of or related to agreement when no language in agreement expressly prevented arbitrator from dismissing claim on that basis, and rejecting defendant's reliance on provision stating that "the arbitrator has no power or authority to make awards or issue orders of any kind except as expressly permitted by the [a]greement, and in no event may the arbitrator have the authority to make any award that provides for punitive or exemplary damages" (emphasis omitted; internal quotation marks omitted)).

Although the equitable remedy of disentitlement fairly may be characterized as a sanction, the dissent's reliance on AAA Rule R-58 ("Sanctions") as a constraint on the arbitrator's authority in the present case and a reason to vacate the award is misplaced for several reasons. Ahmed has made no argument in his brief to this court in reliance on this rule: his brief does not cite Rule R-58, quote any language from Rule R-58, or even paraphrase key language in Rule R-58. Oak, in turn, had no reason to address in its brief, and therefore did not address, the impact, if any, of Rule R-58 on the arbitrator's authority.[21]

[21] That the decision not to make this argument was intentional is supported by the fact that Ahmed's counsel did refer, briefly, to AAA Rule R-58 in argument before the trial court after noting that the rule had been overlooked in Ahmed's brief to that court. Specifically, counsel wanted to "give [the trial court] a flavor of what the body of . . . rules incorporated by the agreement requires" and, before discussing AAA Rule R-47 (a), which the arbitrator had cited, pointed out that, under "[Rule R-58], the arbitrator may not enter a default award as a sanction. So, that's quite plain." The omission of any argument on appeal that the arbitrator's order exceeded his authority under Rule R-58 suggests that counsel concluded that this rule was immaterial to Ahmed's arguments to this court or that counsel declined to rely on

Ahmed *v.* Oak Management Corp.

In addition to these briefing concerns, nothing in AAA Rule R-58 *expressly prohibits* the arbitrator from ordering any remedy or relief that is punitive in effect under any circumstance other than the violation of an order or an obligation under an AAA rule. If that were the case, then it might be fair to conclude that the arbitrator had exceeded his authority by disregarding express contractual language. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 99–100 (arbitrator exceeded authority by awarding attorney's fees when agreement expressly prohibited "punitive damages," and attorney's fees and costs provide "the same relief and serve the same function as would be afforded by common-law punitive damages"); see also *Kashner Davidson Securities Corp.* v. *Mscisz*, 531 F.3d 68, 77–79 and n.7 (1st Cir. 2008) (holding that arbitral panel's dismissal of appellants' counterclaims and third-party claims as sanction in contravention of explicit terms of code governing securities dealers, which specified that dismissal may occur only after lesser sanctions have been imposed and proven ineffective, could satisfy either manifest disregard of law or excess of authority); A. Campbell, annot., "Construction and Application of § 10 (a) (4) of Federal Arbitration Act (9 USCS § 10 (a) (4)) Providing for Vacating of Arbitration Awards Where Arbitrators Exceed or Imperfectly Execute Powers," 136 A.L.R. Fed. 183, 219–20, § 2 (a) (1997) ("Courts have occasionally vacated the awards in commercial arbitrations on the grounds that the arbitrators have exceeded their powers in granting remedies which they were not authorized to grant. . . . Generally, however, the courts have been reluctant to vacate commercial arbitration awards on this ground, especially where there is no express restriction on the remedies an arbi-

it to avoid a concession that Ahmed had defaulted. In any event, it is fair to presume that this omission was purposeful. The deferential standard under which we review arbitration awards counsels against making arguments for a party seeking to vacate an award.

348 Conn. 152        OCTOBER, 2023        199

Ahmed *v.* Oak Management Corp.

trator is authorized to award in the arbitration agree-
ment . . . ." (Citations omitted.)).[22]

The arbitrator also may have inferred from the broad
authority conferred under AAA Rules R-23, R-31 and R-
47 that Rule R-58 is not the exclusive source of authority

---

[22] Cases cited by the dissent that identify circumstances in which an
arbitrator exceeded his authority are consistent with our view. None of these
cases involved an arbitrator's (mis)interpretation of the parties' agreement.
Instead, they involved the arbitrator's disregard of an express, unambiguous
and, importantly, unconditional prohibition/mandate in the agreement or
his consideration of matters beyond those limited matters submitted to the
arbitrator. See, e.g., *Edstrom Industries,. Inc.* v. *Companion Life Ins. Co.*,
516 F.3d 546, 552 (7th Cir. 2008) (if parties' agreement tells arbitrator "to
apply Wisconsin law, he cannot apply New York law"), overruled in part
on other grounds by *Hall Street Associates*, *LLC* v. *Mattel*, *Inc.*, 552 U.S.
576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Apache Bohai Corp. LDC* v.
*Texaco China BV*, 480 F.3d 397, 401, 401–402 n.3 (5th Cir. 2007) (stating
that, "[i]f the contract creates a plain limitation on the authority of an
arbitrator, [a court] will vacate an award that ignores the limitation," and
citing example of arbitrator ignoring contractual limitation that "the parties
shall not have a right to seek correction of the award" (internal quotation
marks omitted)), overruled in part by *Hall Street Associates*, *LLC* v. *Mattel*,
*Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Advanced Micro
Devices*, *Inc.* v. *Intel Corp.*, 9 Cal. 4th 362, 381, 885 P.2d 994, 36 Cal. Rptr.
2d 581 (1994) ("arbitrators may not award remedies expressly forbidden by
the arbitration agreement or submission"); *Hoso Foods*, *Inc.* v. *Columbus
Club*, *Inc.*, 190 Cal. App. 4th 881, 890–91, 118 Cal. Rptr. 3d 594 (2010) ("the
arbitrator acted in excess of his authority because no statute authorized
the exclusion of [the] appellant's representative and [AAA] [R]ule [R-23]
. . . expressly restricted the arbitrator's authority to exclude a party repre-
sentative"), review denied, California Supreme Court, Docket No. S189861
(March 23, 2011); *Detroit Automobile Inter-Ins. Exchange* v. *Gavin*, 416
Mich. 407, 438, 331 N.W.2d 418 (1982) (citing case in which award was
deemed in excess of authority when panel's decision was not unanimous
and arbitration agreement stipulated that arbitration panel's decision must
be unanimous); *In re New York State Law Enforcement Officers Union*,
*District Council 82*, *AFSCME*, *AFL-CIO*, 34 App. Div. 3d 1161, 1162, 824
N.Y.S.2d 800 (2006) ("[t]hese clear contractual provisions [barring use of
the criminal standard of proof, beyond a reasonable doubt, in a disciplinary
matter] were ignored, not interpreted, by the arbitrator so [the New York]
Supreme Court did not substitute its interpretation of the contract for that
of the arbitrator [by vacating the award]" (citation omitted)). As we explain
in this opinion, the right to present evidence as provided under Delaware
arbitration law and the terms of the parties' agreement is not inviolate.

Ahmed *v.* Oak Management Corp.

for ordering a remedy or relief that is punitive in effect under any circumstance other than the violation of an order or an obligation under an AAA rule. We can easily envision circumstances in which the arbitrator would need authority to impose sanctions for conduct that does not violate a rule or an order (e.g., fabrication of evidence, destruction of evidence, lying to the arbitrator) to ensure the integrity of the arbitral process and fairness to the party acting in good faith. Cf. *Forsythe International, S.A.* v. *Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023 n.8 (5th Cir. 1990) ("Misconduct, even when deemed irrelevant to the merits, may nevertheless subject offenders to other sanctions. Arbitrators may, for example, devise appropriate sanctions for abuse of the arbitration process.").

We are of course speculating. The arbitrator was not obligated to explain why AAA Rule R-58 did not control; see *Sobel* v. *Hertz, Warner & Co.*, 469 F.2d 1211, 1215 (2d Cir. 1972) ("[a]rbitrators . . . need not give their reasons for their results" (internal quotation marks omitted)); and there are various possibilities as to why he may have determined that it did not. Without an explicit statement in the award to the contrary, we must assume that the arbitrator adopted any interpretation (or misinterpretation) of the agreement that could support the award. See *Kurke* v. *Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) ("when the arbitrators give no explanation for their decision, as commonly occurs in arbitration . . . [a court] must confirm the award 'if any justification can be gleaned from the record' "); *Feibelman* v. *F.O., Inc.*, 604 A.2d 344, 345 (R.I. 1992) ("when a party claims that the arbitrators have exceeded their authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made" (internal quotation marks omitted)). Even if we were to conclude that AAA Rule R-58 implicitly precluded the

348 Conn. 152 OCTOBER, 2023 201

Ahmed *v.* Oak Management Corp.

disentitlement order, our disagreement with the arbitrator's interpretation of the agreement is not a basis for concluding that he exceeded his authority.[23] By concluding otherwise, the dissent not only advances arguments not made by Ahmed, but it impermissibly treats the present case as if we are reviewing a restricted arbitral submission, entitling this court to order vacatur for errors of law that do not rise to the level of manifest disregard of the law.

B

Ahmed also contends that the arbitrator failed to provide him with a full and fair hearing in violation of § 52-418 (a) (3). That subdivision provides in relevant part that an arbitration award shall be vacated "if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ." General Statutes § 52-418 (a) (3). Eschewing any argument that the arbitrator refused to postpone the hearing upon sufficient cause shown, a claim Ahmed made to the trial

---

[23] Our independent research has revealed a few cases in which a court has pointed to the absence of a provision addressing sanctions when concluding that a broad grant of arbitration authority includes authority to sanction bad faith conduct. See, e.g., *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, supra, 564 F.3d 88–89; *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 761 and n.8 (Minn. 2014). We do not interpret these cases to hold that, if a sanctions provision is included in the parties' agreement, an arbitrator necessarily would exceed his authority by issuing a sanction other than one specified in the sanctions provision, *regardless of whether that provision included any limiting or prohibitory language.* See *ReliaStar Life Ins. Co. of New York* v. *EMC National Life Co.*, supra, 89 ("[O]ur holding today should not be understood to preclude parties who wish to limit the scope of an arbitrator's sanction authority to *exclude* attorney's fees or arbitrator's awards from doing so. We require only that they *explicitly and clearly state that intent as part of their agreement to arbitrate.*" (Emphasis added.)) The dissent's reliance on *Seagate Technology, LLC*, for a more expansive view of the law is misplaced.

Ahmed *v.* Oak Management Corp.

court, Ahmed relies on the second and third grounds contained in subdivision (3) of § 52-418 (a). Specifically, he contends that the arbitrator's orders constituted a refusal to hear any evidence and amounted to prejudicial misconduct by preventing Ahmed from defending himself, pursuing a counterclaim, and reviewing the evidence against him. An essential premise of his claim under § 52-418 (a) (3) is that the arbitrator could not properly apply the fugitive disentitlement doctrine to achieve this end, and, therefore, the doctrine was effectively irrelevant.[24] We conclude that Ahmed cannot prevail on either of the misconduct grounds that he invokes.

We begin by observing that, as previously interpreted and applied by this court, the alleged "misconduct" of the arbitrator does not fall within either ground invoked. This court has explained that "a party challenging an arbitration award [under § 52-418 (a) (3)] on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an *evidentiary* ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." (Emphasis added; internal quotation marks omitted.) *McCann* v. *Dept. of Environmental Protection*, supra, 288 Conn. 215; accord *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 475; *O & G/ O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 149, 523 A.2d 1271 (1987); see also *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (interpreting same ground in federal law "to mean that except where fundamental fairness is violated, arbitration determinations will not be opened

---

[24] Ahmed asserts that the fugitive disentitlement doctrine could not justify the arbitrator's deprivation of his rights because this doctrine does not apply (1) to arbitration generally, as the purpose of the doctrine is to protect the integrity of judicial proceedings, or (2) to the present arbitration because it is not related to the insider trading case from which Ahmed was deemed a fugitive, and (3) to the present case because its application was not required by or tailored to the circumstances, as required by *Degen* v. *United States*, 517 U.S. 820, 829, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996).

Ahmed *v.* Oak Management Corp.

up to *evidentiary* review'' (emphasis added)). We have characterized misconduct that the statute describes as ''any other action by which the rights of any party have been prejudiced''; General Statutes § 52-418 (a) (3); to apply to ''other varieties of *procedural* irregularity''; (emphasis in original) *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 647, 165 A.3d 1228 (2017); such as ex parte actions. See *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 146–47 (providing examples of impropriety satisfying this ground, including participation in ex parte communications, ex parte receipt of evidence as to material fact without notice to party, holding hearings or conducting deliberations in absence of member of arbitration panel, and undertaking independent investigation into material matter after close of hearings and without notice to parties). In light of Ahmed's own dilatory conduct that was itself frustrating the fairness of the proceeding, we cannot conclude that the arbitrator's disentitlement order in the present case implicated the fundamental fairness of the proceeding. Our determination that the arbitrator did not exceed his authority by issuing this order inexorably leads to the conclusion that the order cannot be characterized as a procedural irregularity.

Although there are cases in which other courts have construed these misconduct grounds to extend to circumstances other than those this court has thus far identified,[25] we need not consider in the present case

[25] See, e.g., *Wachovia Securities, LLC* v. *Brand*, 671 F.3d 472, 479–80 (4th Cir. 2012) (rejecting claim that arbitral panel's decision not to schedule another day of hearings at which claimant could present evidence on question of attorney's fees deprived claimant of fundamentally fair hearing when claimant missed deadline for filing brief on this issue and could have argued in brief that hearing was required); *National Casualty Co.* v. *First State Ins. Group*, 430 F.3d 492, 498 (1st Cir. 2005) (assuming that arbitrator misconduct as ground for vacatur was not limited to refusal to consider evidence and extended to claim that arbitrator improperly had failed to compel party to produce material evidence); *Gulf Coast Industrial Workers Union* v. *Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995) (arbitrator declined

Ahmed *v.* Oak Management Corp.

whether we also should construe these grounds more expansively and whether a more expansive scope of either ground would extend to the present circumstances. Regardless of which misconduct ground is invoked, to justify vacating the award on this basis, Ahmed must establish that he was substantially *prejudiced* by the arbitrator's misconduct. See *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 476; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 59–60,

to hear evidence by misleading party into thinking it did not need to present certain evidence); *Robbins* v. *Day*, 954 F.2d 679, 684–85 (11th Cir.) (court was willing to consider claim that failure to compel testimony constituted refusal to hear evidence under 9 U.S.C. § 10 (a) (3)) (overruled in part on other grounds by *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)), cert. denied sub nom. *Robbins* v. *PaineWebber, Inc.*, 506 U.S. 870, 113 S. Ct. 201, 121 L. Ed. 2d 143 (1992); *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.*, 397 F.2d 594, 597–600 (3d Cir.) (arbitration panel's refusal to conduct inquiry requested by union to determine whether refusal of union's expert witness to continue to testify was result of employer's intimidation, based on ruling that entire matter was irrelevant to issues presented for arbitration, was considered under ground of refusal to consider pertinent and material evidence), cert. denied, 393 U.S. 954, 89 S. Ct. 378, 21 L. Ed. 2d 365 (1968); *Prudential Securities, Inc.* v. *Dalton*, 929 F. Supp. 1411, 1416–18 (N.D. Okla. 1996) (arbitral panel improperly declined to hear material evidence when it granted motion to dismiss without first providing claimant opportunity to have previously filed motion to compel production of documents decided and to present evidence in support of claim); *Cofinco, Inc.* v. *Bakrie & Bros., N.V.*, 395 F. Supp. 613, 615 (S.D.N.Y. 1975) (The appellate arbitration panel improperly ruled on the merits of the issues that had not been considered in the underlying arbitration proceeding, as the parties were never afforded the opportunity to present evidence to the appellate panel and the appellate panel had no authority to hear evidence: "The result of the short circuit effected on appeal was a basic species of arbitral 'misconduct'—'in refusing to hear evidence pertinent and material to the controversy . . . .' 9 U.S.C. § 10 (c) [1970]. It makes no difference that the appellate panel may have acted only in neglectful disregard rather than by explicitly 'refusing' to hear the evidence. The fundamental right to be heard was grossly and totally blocked."); see also *Kurley Dog Investments, LLC* v. *Buckley*, Docket No. CV-08-4034433, 2009 WL 1424701, *2–4 (Conn. Super. April 22, 2009) (considering arbitral panel's order dismissing party's claim with prejudice as sanction for failure to comply with discovery under misconduct ground for vacatur but concluding that order was within panel's discretion).

Ahmed *v.* Oak Management Corp.

994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010); *Wallingford* v. *Wallingford Police Union Local 1570*, 45 Conn. App. 432, 440, 696 A.2d 1030 (1997); see also *Remmey* v. *PaineWebber, Inc.,* 32 F.3d 143, 149 (4th Cir. 1994) ("the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration" (internal quotation marks omitted)), cert. denied, 513 U.S. 1112, 115 S. Ct. 903, 130 L. Ed. 2d 786 (1995). We conclude that Ahmed has failed to meet this burden.

Nothing in the arbitration record indicates what evidence, if any, Ahmed would have submitted had the fugitive disentitlement doctrine not been applied, other than the exhibits appended to his motions that the arbitrator considered and deemed legally insufficient. His brief to this court identifies no evidence, documentary or testimonial, that he had been prepared to offer if a hearing on liability had taken place. He makes no representation that he would have testified as to any specific material fact that could have cast doubt on his culpability for the acts alleged. Nor does he claim that he had any other basis, through cross-examination or otherwise, to impeach Oak's allegations.

Ahmed's brief to this court does identify several topics on which he would have offered argument or unspecified evidence, but each of them relates to whether, or to what extent, Ahmed should have to pay damages as a consequence of his wrongful actions.[26] He presumably

---

[26] In his memorandum of law in the trial court in support of his application to vacate the arbitration award and in his brief to this court, Ahmed contends that he "would have advanced argument and evidence that the award constituted impermissible duplicative recovery," that he "would have introduced evidence that Oak already seized the forfeited assets, valued well north of $35 million, pursuant to the parties' contract," that he "would have presented additional evidence of Oak's conduct, which would have further affected the calculation of the damages award," that he would have argued that "the bulk of the arbitration award comprises disgorgement for gross compensation paid to [him] in the amount of $33.26 million," a number that is "on its face questionable," and that "evidence of [the] lawful and profitable work he did for Oak could have further altered the award."

Ahmed *v.* Oak Management Corp.

could have made those very arguments, however, had he chosen to participate in the damages hearing. As previously noted, we decline to speculate that Ahmed would have been barred from presenting evidence or argument at that hearing.

A similar problem arises from Ahmed's complaints about the arbitrator's order granting Oak's request to shield confidential documents. The arbitrator apparently accepted Oak's argument that "granting [Ahmed] access to confidential information in this arbitration would permit [Ahmed] to make an end run around the protective orders currently in place [in] the [federal action] by granting him access to the same confidential materials he is expressly prohibited from viewing in that matter." Ahmed argues in his brief to this court that the protective orders in that action did not bar Oak from *using* its own documents and that doing so would, in turn, trigger Ahmed's legal right to see that evidence. Ahmed further complains that the arbitrator gave Oak unilateral authority to designate documents as confidential, which Oak then used to shield documents that were not subject to the federal court's protective order and/or did not contain confidential information. The arbitrator found that Ahmed failed to participate in the damages hearing, however, and there is no basis to conclude that he could not have raised any of these contentions at that hearing. We have already held that we have no occasion to upset this finding or to order that the award be vacated on this basis. Similarly, we cannot order the award vacated on the basis of Ahmed's claim that the arbitrator was mistaken about the legal effect of the protective order. Finally, insofar as Ahmed contends that Oak's assessment of confidentiality was overbroad, he could have sought independent review, just as he did in federal court. See *Securities & Exchange Commission* v. *Ahmed*, supra, 2017 WL 3169059, *1–2.

Ahmed *v.* Oak Management Corp.

To avoid the previously mentioned deficiencies, Ahmed argues that the arbitrator's actions should be deemed *structural* error, prejudicial per se, thus relieving him of the burden of proving that he was prejudiced by the arbitrator's alleged misconduct.[27] Ahmed has not directed our attention to any cases in which structural error has been applied to any ground for vacating an arbitration award. Although it might be reasonable to *presume* prejudice when a party has been deprived of a hearing on the merits—indeed, the dissent cites case law from other jurisdictions supporting such a proposition—the exceedingly unusual circumstances of the present case clearly demonstrate that any such presumption easily would be overcome.

It is important to reiterate certain facts previously noted. The arbitrator originally had scheduled the liability hearing to take place on July 21, 2020, the same date on which he conducted (remotely) the damages hearing. The morning of July 21, Ahmed claimed, via an email purportedly sent by his attorney in India, that he was not "able to join any hearing" because he was "currently quarantined in a care facility due to [a] positive [COVID-19] test with no access to computers or devices . . . ." Neither Ahmed nor his representative attended the July 21 hearing. Ahmed makes no claim on appeal that the arbitrator improperly refused to postpone the hearing. Nor does he make the bizarre contention that (a) he would not have claimed to be unable to attend a July 21 hearing had the hearing proceeded as one for liability rather than damages, or (b) he still would have claimed to have been unable to attend but nonetheless would have attended if the hearing was to determine liability. In the absence of any rational basis

---

[27] Ahmed points to the principle that "structural defects . . . defy analysis by [harmless error] standards" but asserts at the same time that, even if he is required to show that his participation might have altered the outcome of the arbitration, "this is easily done." (Internal quotation marks omitted.)

Ahmed *v.* Oak Management Corp.

on which to base an assumption that Ahmed would have attended the July 21 hearing if the disentitlement order had not been issued, there is no basis to presume that the disentitlement order prejudiced Ahmed. Indeed, the AAA rules explicitly contemplate that, under such circumstances, the matter may proceed without a party who fails to attend. See AAA Rule R-31 ("[u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement").[28]

In sum, Ahmed cannot satisfy § 52-418 (a) (3) unless the arbitrator's order constituted misconduct *and* Ahmed suffered prejudice from that misconduct. Because prejudice is not demonstrated by this record, Ahmed cannot prevail even if the arbitrator's application of the

[28] Ahmed's demonstrated intention not to participate in whatever hearing was conducted on July 21, 2020, aligns with his conduct in the closely related civil fraud action—Oak's allegations were taken largely from the District Court's findings in that action. Ahmed asserts in his brief to this court: "Critically, the District Court [in that case] did not apply the fugitive disentitlement doctrine to bar [him] from contesting the case against him, putting in evidence, or otherwise raising affirmative defenses and counterclaims." (Emphasis omitted.) Yet, even in the absence of these impediments, Ahmed declined to testify, to offer any evidence or to advance any argument in that proceeding to establish that he did not commit the fraudulent acts alleged. See *United States Securities & Exchange Commission* v. *Ahmed*, supra, 308 F. Supp. 3d 637 (noting that Ahmed made no argument in opposition to SEC's motion for summary judgment that he did not commit alleged fraud, instead contending primarily that he should not be held liable because "(1) certain fraudulent acts are [time barred] by the statute of limitations, (2) the fraud was not sufficiently connected to securities transactions, and (3) the underlying securities transactions are not sufficiently domestic to be within the reach of the United States securities laws"); see id., 648, 652 n.18 (noting that Ahmed had invoked fifth amendment privilege not to testify or to respond to SEC's allegations and discovery requests, and made only unsubstantiated assertions); see also *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2018 WL 11458925, *2–3 (D. Conn. March 29, 2018) (citing Ahmed's admission in civil fraud action that his allegations that Oak's court filings included lies and misrepresentations were "unsubstantiated" and his justification that this omission was due to refusal of SEC and Oak to provide him with relevant evidence).

348 Conn. 152 OCTOBER, 2023 209

Ahmed *v.* Oak Management Corp.

fugitive disentitlement doctrine to the arbitration, or the extent to which he applied it, constituted error.

C

Ahmed also contends that the award violated the well established public policy of fundamental fairness in arbitral proceedings, i.e., the right to present evidence, and the policy of upholding the integrity of the arbitration process. We disagree.

"A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's decision* but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [an agreement] is limited to situations [in which] the contract as interpreted would violate some explicit public policy that is [well-defined] and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Emphasis added; internal quotation marks omitted.) *New Haven* v. *AFSCME, Council 4, Local 3144*, 338 Conn. 154, 171–72, 257 A.3d 947 (2021). "In determining whether an arbitral award violates a well-defined public policy, this court has looked to a variety of sources as embodiments of such policies: criminal statutes . . . noncriminal statutes . . . city charters . . . as well as the [R]ules of [P]rofessional [C]onduct governing attorneys." (Citations omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 837–38, 6 A.3d 1142 (2010).

Ahmed *v.* Oak Management Corp.

Applying these principles to the present case, we must presume that the arbitrator correctly interpreted the agreement to authorize his application of the fugitive disentitlement doctrine. See *Marlborough* v. *AFSCME, Council 4, Local 818-052*, 309 Conn. 790, 805, 75 A.3d 15 (2013) ("the sole question that the court must decide . . . is whether, under the arbitrator's presumptively correct interpretation of the contract, the contract provision violates a well-defined and dominant public policy" (emphasis omitted; internal quotation marks omitted); see also *Eastern Associated Coal Corp.* v. *United Mine Workers of America, District 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000) (when employer seeks vacatur of arbitration award on public policy grounds, "[court] must treat the arbitrator's award as if it represented an agreement between [the employer] and the union as to the proper meaning of the contract's words 'just cause' "). Ahmed therefore must identify some source external to the agreement embodying a clearly established public policy that is violated by giving effect to the award.[29]

Ahmed points to case law stating that parties to an arbitration proceeding must be afforded an opportunity to know the evidence against them and to present rele-

---

[29] See, e.g., *Stratford* v. *AFSCME, Council 15, Local 407*, 315 Conn. 49, 50–51, 105 A.3d 148 (2014) (considering "whether an arbitration award reinstating a police officer, as opposed to the mandated dismissal of the officer, violated a clearly discernible public policy against intentional dishonesty by police officers in connection with their employment"); *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 298 Conn. 838 (considering "whether a public policy against using an application for and admission to [an] accelerated rehabilitation program as evidence or an admission of misconduct is clearly discernible under [General Statutes] § 54-56e"); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 442–51 (considering whether rule of professional conduct reflected clear public policy that clients have unfettered right to select counsel of their choice and whether that public policy was violated by arbitrator's enforcement of forfeiture upon competition provision, which conditioned receipt of partner's retirement benefits on abstention from practice of law).

Ahmed *v.* Oak Management Corp.

vant evidence in their favor. Putting aside the fact that we have not considered statements in case law to constitute the expression of a well-defined and dominant public policy, Ahmed's reliance is misplaced because this case law does not hold that these rights are immutable such that no conduct could justify the impairment or forfeiture of these rights. As we have previously noted, the AAA sanctions rule, which the parties' agreement incorporates by reference, plainly acknowledges the arbitrator's authority to make orders that have such an effect under certain circumstances. See footnote 17 of this opinion. Although neither party contends that Ahmed's disentitlement was a sanction governed by this rule; see footnotes 13 and 15 of this opinion; the AAA's formal endorsement of sanctions belies Ahmed's per se policy argument.

Insofar as Ahmed points to certain statements from this court's decision in *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 306–307, 901 A.2d 1198 (2006), which he claims recognizes a broader public policy in ''upholding the integrity of the arbitration process,'' his reliance is misplaced for different reasons. That case acknowledges that judicial approval of certain practices would undermine confidence in the legitimacy of the arbitral process. See id. Even if we assume that these statements reflect an explicit, well-defined and dominant public policy, Ahmed ignores the fact that they simply embody the policy justifying the extraordinary *statutory* grounds on which an award may be vacated. See id. (addressing this concern in context of claim of manifest disregard of law in violation of § 52-418 (a) (4)); *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 148 (addressing this concern in context of claim of refusal to consider pertinent and material evidence in violation of § 52-418 (a) (3)). Nothing indicates an intention to articulate a public policy that would allow courts to vacate an award

Ahmed *v.* Oak Management Corp.

when we presume that the arbitrator has correctly interpreted the parties' agreement to authorize the relief ordered.

D

Ahmed also claims that we should vacate the award because it violates 9 U.S.C. § 10 (a) (3) and (4) of the FAA. He contends that vacatur is required under the FAA because the arbitrator (1) was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy" and "other misbehavior by which [his rights] have been prejudiced"; 9 U.S.C. § 10 (a) (3) (2018); and (2) "exceeded [his] powers . . . ." 9 U.S.C. § 10 (a) (4) (2018). We disagree.

This court has recognized that these federal grounds are virtually identical to those in § 52-418 (a) (3) and (4), our statutory provisions governing the vacatur of arbitration awards. See *Garrity* v. *McCaskey*, 223 Conn. 1, 8 n.7, 612 A.2d 742 (1992) (§ 52-418 (a) (4)); *O & G/ O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 150 n.12 (§ 52-418 (a) (3)). Ahmed has identified no case law that supports a different interpretation of the federal provisions than our cases have previously discussed. Cf. *Tempo Shain Corp.* v. *Bertek, Inc.*, supra, 120 F.3d 20 (interpreting 9 U.S.C. § 10 (a) (3) to mean that, "except where fundamental fairness is violated, arbitration determinations will not be opened up to *evidentiary* review" (emphasis added)). Because Ahmed's arguments rehash the same contentions he has asserted in support of his state law grounds, his claims under the FAA fail for the reasons previously articulated.

E

Finally, Ahmed contends that, if this court determines that vacatur of the award is unwarranted, we should nevertheless issue a limited remand under General Stat-

Ahmed *v.* Oak Management Corp.

utes § 52-419 (a) (1) so that the trial court can modify the arbitrator's award to prevent Oak's "impermissible multiple recovery" for the same conduct. Specifically, he claims that the $56.6 million arbitration award "overlaps with (1) the forfeited assets, which are worth more than $35 million and were seized by Oak four years before the arbitration commenced, and (2) the SEC judgment (currently on appeal), totaling at least $64.1 million, which the SEC has represented would be given to Oak. . . . Thus, all together, Oak stands to obtain over $155 million—in truth, a remarkable windfall." (Citation omitted; emphasis omitted.) Oak vigorously contests both the facts asserted and their legal significance.

We conclude that a remand would not be proper in this case. Section 52-419 (a) (1) authorizes the trial court to modify an award "[i]f there has been an evident material miscalculation of figures . . . ." "In [ordinary] English, a 'miscalculation of figures' refers to mathematical, not legal, errors." *Mid Atlantic Capital Corp.* v. *Bien*, 956 F.3d 1182, 1191 (10th Cir. 2020); *Grain* v. *Trinity Health, Mercy Health Services, Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (" 'an evident . . . miscalculation of figures' concerns a computational error in determining the total amount of an award"), cert. denied, 558 U.S. 820, 130 S. Ct. 96, 175 L. Ed. 2d 30 (2009); *Apex Plumbing Supply, Inc.* v. *U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir.) ("[w]here no mathematical error appears on the face of the award . . . an arbitration award will not be altered" as miscalculation of figures (internal quotation marks omitted)), cert. denied, 525 U.S. 876, 119 S. Ct. 178, 142 L. Ed. 2d 145 (1998); *CLP Toxicology, Inc.* v. *Casla Bio Holdings, LLC*, Docket No. 2018-0560-TMR, 2019 WL 1233458, *1 (Del. Ch. February 18, 2019) ("[a]n 'evident material miscalculation' is one 'of mathematical or computational error,' rather than 'a substantive conclusion of the arbitrator' that is 'largely based

Ahmed *v.* Oak Management Corp.

on fact' ''). If a purported error exists in the present case, it is legal in nature, not a '' 'miscalculation.' ''[30] See *LaFrance* v. *Lodmell*, 322 Conn. 828, 860 n.10, 144 A.3d 373 (2016) (trial court properly modified award to correct "material miscalculations of figures and mistakes *that did not affect the merits of the controversy*" (emphasis added)). Therefore, we decline Ahmed's alternative request to remand the case to the trial court.

In closing, we acknowledge a modicum of discomfort with the arbitrator's failure to provide Ahmed an opportunity to respond before ruling on Oak's motion for disentitlement and with the aspect of that ruling barring him from contesting Oak's allegations.[31] See *Federal Deposit Ins. Corp.* v. *Pharaon*, 178 F.3d 1159, 1162–63 (11th Cir. 1999); see also id., 1162 ("it is very different to bar a fugitive from affirmatively seeking relief than to bar a fugitive from defending civil claims brought against him"). We underscore, however, that we have no occasion to determine whether the arbitrator's award

---

[30] The District Court rejected a similar duplicative recovery argument in the civil fraud action, stating: "Ahmed argues that the [a]mended [f]inal [j]udgment should be amended to reduce the disgorgement award by the amount of '[Ahmed's] [nonforfeited] assets already in the hands of the purported victim,' Oak. . . . [Ahmed] requests that the value of those [non-forfeited] assets be determined first and credited against disgorgement' . . . . [Ahmed] has repeatedly raised arguments regarding the status of and claimed need to value assets held by Oak, and the [c]ourt has repeatedly rejected those arguments." (Citations omitted; emphasis omitted.); *United States Securities & Exchange Commission* v. *Ahmed*, Docket No. 3:15cv675 (JBA), 2019 WL 4187442, *2 (D. Conn. September 4, 2019).

[31] We recognize that whether Ahmed was improperly deprived of an opportunity to *respond* to Oak's disentitlement and confidentiality motions is a question distinct from whether he was improperly deprived of an opportunity to *participate* in the proceedings as a result of the rulings on those motions. As we previously indicated; see footnote 15 of this opinion; Ahmed did not raise the lack of opportunity to respond in his appeal, except in peripheral references in his appellate brief—one sentence in his recitation of facts and a one sentence footnote. We therefore have no occasion to address whether vacatur would be warranted on this basis. We also note that Ahmed makes no distinction in his appeal between being disentitled from defending against Oak's claims versus asserting affirmative claims.

Ahmed *v.* Oak Management Corp.

and underlying rulings were legally correct or equitable. "[B]y including an arbitration clause in their contract, the parties bargain for a decision maker [who] is not constrained by formalistic rules governing courtroom proceedings and dictating judicial results. . . . Put simply, the parties bargain for the arbitrator's independent judgment and sense of justice . . . . [Therefore], even if we disagree with the [arbitrator's] reasoning and the bases for [his] award, the award nevertheless controls unless the [arbitrator's] memorandum patently shows an infidelity to [his] obligation . . . ." (Citations omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780–81. On the basis of the grounds he has raised in this appeal, we conclude that Ahmed has failed to demonstrate that the arbitrator's order and award manifested such infidelity.

The judgment is affirmed.

In this opinion McDONALD, MULLINS and PRESCOTT, Js., concurred.

ALEXANDER, J., with whom ROBINSON, C. J., and ECKER, J., join, dissenting. It is axiomatic that arbitration agreements are contracts and that an arbitrator has only those powers that are conferred on him or her by the arbitration agreement. See, e.g., *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 72, 856 A.2d 364 (2004) ("an arbitrator's jurisdiction is rooted in the agreement of the parties" (internal quotation marks omitted)). Case law establishes that, when an arbitrator violates an explicit directive contained in an arbitration agreement, especially a provision intended to ensure the fairness of the proceeding, the arbitrator has acted in excess of his or her authority and outside of the scope of the agreement. "[A]n arbitrary award outside of the scope of the agreement of arbitration is not bind-

216 OCTOBER, 2023 348 Conn. 152

Ahmed *v.* Oak Management Corp.

ing [on] anyone, because it has no legal sanction.'' (Internal quotation marks omitted.) *Detroit Automobile Inter-Ins. Exchange* v. *Gavin*, 416 Mich. 407, 440, 331 N.W.2d 418 (1982); see also id. (''[t]he [arbitration] agreement . . . entered into between the parties is the law of the case'' (internal quotation marks omitted)). In the present case, the employment agreement between the plaintiff, Iftikar Ahmed, and the defendant, Oak Management Corporation (Oak), contained an arbitration clause that incorporated the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association (AAA), which strictly circumscribe an arbitrator's authority to impose punitive sanctions[1] or to limit a party's right to assert claims and defenses, to present evidence, or to otherwise participate fully in the arbitration. See American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (October 1, 2013) (AAA rules). Because the AAA rules clearly precluded application of the fugitive disentitlement doctrine[2] to deprive

[1] ''[Although] courts possess inherent judicial powers that enable them to impose punitive sanctions . . . arbitrators have no correlating inherent authority and receive their powers from either the arbitration agreement . . . or the [l]egislature.'' (Citations omitted.) *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 761 (Minn. 2014), citing *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

[2] The fugitive disentitlement doctrine, one of the most severe sanctions a court can impose, is ''the rule that a fugitive (usually a criminal one) forfeits the right to appeal the judgment (usually a conviction) he's fleeing.'' *In re Kupperstein*, 943 F.3d 12, 15–16 (1st Cir. 2019). The policy behind the doctrine is ''to ensure that courts don't waste time affirming a judgment that can't be enforced against the absconder.'' Id., 24. In discussing the fugitive disentitlement doctrine, the United States Supreme Court has stated that ''[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities'' but that ''[p]rinciples of deference counsel restraint in resorting to inherent power . . . and require its use to be a reasonable response to the problems and needs that provoke it . . . .'' (Citations omitted.) *Degen* v. *United States*, 517 U.S. 820, 823–24, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996). *In re Kupperstein* offers an excellent primer on the doctrine, making clear the many reasons why, even if the right to arbitrate were not wholly contractual, and even if the

Ahmed *v.* Oak Management Corp.

Ahmed of his right to arbitrate pursuant to the parties' agreement, I disagree with the majority that the arbitrator did not exceed the scope of his authority under General Statutes § 52-418 (a) (4) by applying that doctrine in this case. A person does not lose his or her contract rights because he or she has been accused of a crime; nor does a person's absconder status in a criminal prosecution extinguish his or her contractual rights.

I also disagree with the majority that the arbitrator did not engage in misconduct under § 52-418 (a) (3) by denying Ahmed an opportunity to present evidence and argument at a hearing on the merits of the parties' respective claims. By its express terms, § 52-418 (a) (3) mandates that the arbitrator hear evidence from the parties that is "pertinent and material to the controversy . . . ." It also mandates vacatur of an arbitral award when the arbitrator engages in "any other action by which the rights of any party have been prejudiced . . . ." General Statutes § 52-418 (a) (3). In the present case, the parties each had a right to a hearing, which was prejudiced by the arbitrator's action. Section 5706 (1) and (2) of title 10 of the Delaware Code Annotated (2013), which governed the parties' agreement, expressly mandates that the arbitrator hold a hearing on the merits of the parties dispute and, upon complaint of one of the parties, it authorizes the courts to intervene and order the arbitrator "to proceed promptly with the hearing."[3] Subdivision (2) of the statute further provides

arbitrator did not lack the inherent authority to impose punitive sanctions; see footnote 1 of this opinion; the fugitive disentitlement doctrine would still be inapplicable to this case. Among them is the fact that courts may not use "the fugitive dismissal power to protect another court's judgments or proceedings, or to sanction contempt for orders other than the judgment on review." *In re Kupperstein*, supra, 23–24. Because Ahmed was not a fugitive with respect to this case and had shown no contempt for any arbitral rule or ruling, application of the fugitive disentitlement doctrine was simply unwarranted.

[3] Unlike Delaware, Connecticut does not mandate that the arbitrator conduct a hearing. General Statutes § 52-407oo titled "Arbitration process," provides in relevant part: "(b) An arbitrator may decide a request for summary disposition of a claim or particular issue:

Ahmed *v.* Oak Management Corp.

that, in addition to the right to be heard and to present material evidence, the parties are "entitled . . . to cross-examine witnesses appearing at the hearing." Del. Code Ann. tit. 10, § 5706 (2) (2013). A failure to conduct a hearing in accordance with the demands of § 5706 is recognized as a ground for vacatur under Delaware law.[4] See Del. Code Ann. tit. 10, § 5714 (a) (4) (2013). The arbitrator in the present case did not conduct a hearing, much less allow Ahmed to present material evidence and to cross-examine Oak's witnesses. He therefore engaged in misconduct under Connecticut law by denying Ahmed the hearing to which he was entitled by the arbitration clause in the parties' agreement. Accordingly, I respectfully dissent.

I

I begin with Ahmed's claim that the arbitrator exceeded his authority by preventing him from presenting claims, evidence, or defenses to Oak's claims in violation of the AAA rules. "[C]ourts must rigorously enforce arbitration agreements according to their terms . . . including terms that specify . . . the rules under which that arbitration will be conducted . . . ." (Citations omitted; internal quotation marks omitted.) *American Express Co.* v. *Italian Colors Restaurant*, 570 U.S. 228, 235, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013). "The

"(1) If all interested parties agree; or

"(2) Upon request of one party to the arbitration proceeding if that party gives notice to all other parties to the proceeding and the other parties have a reasonable opportunity to respond.

"(c) *If* an arbitrator orders a hearing, the arbitrator shall set a time and place and give notice of the hearing not less than five days before the hearing begins. . . ." (Emphasis added.)

Thus, our arbitration procedure statute provides "if" the arbitrator holds a hearing; General Statutes § 52-407oo; whereas Delaware's statute provides that the arbitrator "shall" hold a hearing unless the parties agree to forgo one. Del. Code Ann. tit. 10, § 5706 (1) (2013).

[4] Section 5714 of title 10 of the Delaware Code Annotated governs applications to vacate arbitration awards and mirrors the language of our vacatur statute. See General Statutes § 52-418.

Ahmed *v.* Oak Management Corp.

standard for reviewing a claim that the award does not conform to the submission requires what we have termed 'in effect, de novo judicial review.' '' *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005).

An arbitrator's violation of the rules specified in the arbitration agreement—or any other explicit directive contained in the agreement—is universally recognized as a ground for vacatur. See, e.g., *Edstrom Industries, Inc.* v. *Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008) ("[P]recisely because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given [him]. If they tell him to apply Wisconsin law, he cannot apply New York law."), overruled in part on other grounds by *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Apache Bohai Corp. LDC* v. *Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) ("[when] arbitrators act 'contrary to express contractual provisions,' they have exceeded their powers"), overruled in part on other grounds by *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *International Union, United Mine Workers of America* v. *Marrowbone Development Co.*, 232 F.3d 383, 388 (4th Cir. 2000) ("courts owe no deference to an arbitrator who has failed to provide the parties with a full and fair hearing [pursuant to the terms of their arbitration agreement]"); *Executone Information Systems, Inc.* v. *Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994) ("arbitral action contrary to express contractual provisions will not be respected [by courts]" (internal quotation marks omitted)); *Local 1199, Drug, Hospital & Health Care Employees Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) (arbitrator "may not impose a remedy [that] directly contradicts the express language of the collective bargaining agreement" (internal quotation marks omitted));

Ahmed *v.* Oak Management Corp.

*Bonshire* v. *Thompson*, 52 Cal. App. 4th 803, 805–806, 60 Cal. Rptr. 2d 716 (1997) (when arbitration clause in parties' agreement specifically provided that no extrinsic evidence could be introduced in arbitration proceeding, arbitrator exceeded his powers in considering such evidence), review denied, California Supreme Court, Docket No. S061924 (July 16, 1997); *Malekzadeh* v. *Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992) ("if [the arbitrator's] actions are in direct contradiction to the express terms of the agreement of the parties, he has exceeded his authority"); *Detroit Automobile Inter-Ins. Exchange* v. *Gavin*, supra, 416 Mich. 438 (when arbitration agreement stipulated that arbitration panel's decision must be unanimous, "a less than unanimous award was not what the parties agreed to, [and therefore] it could not be enforced"); *Washington* v. *Washington*, 283 Mich. App. 667, 672, 770 N.W.2d 908 (2009) ("arbitrators have exceeded their powers whenever they act beyond the material terms of the contract from which they primarily draw their authority" (internal quotation marks omitted)); *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 765 (Minn. 2014) ("the scope of arbitrator authority is a matter of contract . . . and parties are always free to fashion arbitration agreements in ways that limit the arbitrator's power to award certain types of relief" (citation omitted)).

The law in Connecticut is no different. This court has stated repeatedly that, because arbitration is a creature of contract, "[a] person can be compelled to arbitrate a dispute only if, to the extent that, *and in the manner which, he has agreed so to do.* . . . [I]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed." (Citations omitted; emphasis added; internal quotation marks omitted.) *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn. 72; see also *Levine* v. *Advest, Inc.*, 244 Conn. 732, 745, 714 A.2d

Ahmed *v.* Oak Management Corp.

649 (1998) ("[a]rbitration agreements are contracts and their meaning is to be determined . . . under accepted rules of [state] contract law" (internal quotation marks omitted)). In accordance with these well established principles, we have recognized that "[t]he arbitrator is empowered to decide all issues of fact and law unless he or she is contractually restricted from doing so in some specific way by the language of the arbitration clause." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 86 n.7. The majority acknowledges as much, noting that courts will vacate awards on the ground that the arbitrator has violated the express terms of the arbitral rules specified in the arbitration agreement.

AAA Rule R-32 (a) provides that each party has a right to present evidence and allows the arbitrator to "vary" this right only if *the parties are treated with equality and . . . each party has the right to be heard and is given a fair opportunity to present its case.*[5] (Emphasis added.) By granting Oak's motion for application of the fugitive disentitlement doctrine without allowing Ahmed any opportunity to respond, the arbitrator (1) denied Ahmed any opportunity to present evidence in his defense, and (2) did so without affording Ahmed an opportunity to be heard. There is no ambiguity as to whether this treatment violated the express terms of Rule R-32 (a). Even if the language of Rule R-32 (a) could be expanded to permit the arbitrator to deny Ahmed the right to present evidence, as the majority suggests, it expressly requires that Ahmed have the opportunity to be heard before such an extreme mea-

[5] AAA Rule R-32 (a) provides: "The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case."

Ahmed *v.* Oak Management Corp.

sure is imposed. Fundamental fairness in arbitration requires the "opportunity to be heard and to present relevant and material evidence and argument before the decision makers . . . ." *Bowles Financial Group, Inc.* v. *Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994). The arbitrator's application of the fugitive disentitlement doctrine resulted in a one-sided presentation by Oak of factual allegations and disputed legal arguments that Ahmed was never given an opportunity to contest. The arbitrator heard Oak's reasons for applying the doctrine but never allowed Ahmed to give his reasons against applying it. This manifestly unequal treatment of the parties exceeded the arbitrator's authority under the express terms of Rule R-32 (a).

Additionally, the arbitrator exceeded his authority under AAA Rule R-58, titled "Sanctions," which provides: "(a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

"(b) The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application." The arbitrator's conduct in this case violated the express terms of Rule R-58 in two distinct ways.

First, the arbitrator violated AAA Rule R-58 (b) by imposing a sanction without providing the "party that is subject to [the] sanction request with the opportunity to respond prior to making any determination regarding

Ahmed *v.* Oak Management Corp.

the sanction.'' Although the majority acknowledges that ''the equitable remedy of disentitlement fairly may be characterized as a sanction,'' it is undisputed that the arbitrator granted Oak's request for this sanction without hearing from Ahmed on this issue, without inviting Ahmed to respond, and without waiting for the June 8, 2020 deadline for Ahmed to respond. Proceeding in this manner violated the express terms of Rule R-58, which require the arbitrator to provide a party with an opportunity to respond before imposing a sanction. See AAA Rule R-58. The violation of this rule could not be any more evident.

Second, the arbitrator violated AAA Rule R-58 (a) by imposing a sanction on Ahmed for conduct other than a ''fail[ure] to comply with [his] obligations under [the AAA] rules or with an order of the arbitrator.'' Id. The arbitrator's authority, although broad, is limited to the authority conferred by the AAA rules. See, e.g., *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn. 72 (arbitrator's authority is limited to authority conferred by parties to conduct arbitration in manner they have agreed). The AAA rules grant arbitrators the authority to manage the efficient conduct of the arbitration and to control the parties by threat of sanctions. Rule R-58 (a) authorizes the arbitrator to impose sanctions under two conditions: (1) failure to comply with the AAA rules, or (2) failure to comply with an order of the arbitrator. See AAA Rule R-58 (a). Neither of those conditions was met in this case.

The reality is that the arbitrator imposed a sanction of his own invention, one not included in AAA Rule R-58 or any fair construction of its terms. By applying the fugitive disentitlement doctrine, the arbitrator imposed a severe sanction against Ahmed for conduct (remaining in India) that violated no arbitral rule or order. Ahmed was never ordered by the arbitrator to return to the United States. His location in India manifestly was not

Ahmed *v.* Oak Management Corp.

a circumstance falling within the scope of Rule R-58. By concluding otherwise, the arbitrator exceeded the authority conferred on him by the arbitration clause in the parties' agreement. See, e.g., *Seagate Technology, LLC* v. *Western Digital Corp.*, supra, 854 N.W.2d 761 and n.8 ("[t]he arbitrator's ability to issue punitive sanctions is controlled by the arbitration agreement," and, "[t]herefore, parties are able to include or exclude the use of punitive sanctions when constructing an arbitration agreement, either through express provision or through the incorporation of a particular set of arbitration rules [such as the AAA rules]").

Furthermore, as previously stated, an arbitrator's authority to limit a party's participation in the arbitration on the basis of a violation of the AAA rules or an order of the arbitrator is expressly conditioned on that party's right to be heard prior to the imposition of the sanction. See AAA Rule R-58. Again, this condition was not met in this case. To the contrary, as the majority opinion indicates, the arbitrator granted Oak's motion for application of the fugitive disentitlement doctrine within a week of its filing, without allowing Ahmed any opportunity to respond.

The majority contends that the arbitrator did not ignore AAA Rule R-58 (a) but merely interpreted the AAA rules to allow sanctions for conduct other than a violation of an arbitral rule or order. I agree that arbitrators have broad discretion to interpret the text of the arbitral rules chosen by the parties. I do not agree, however, that the arbitrator's decision in this case can be viewed as a mere act of interpretation. The arbitrator's ruling is not grounded in any reasonable reading of the language of Rule R-58, which is the AAA rule governing sanctions. Instead, the arbitrator unilaterally created an entirely new basis for the imposition of sanctions that bears no connection to the grounds specified in Rule R-58.

Ahmed *v.* Oak Management Corp.

The parties' choice to arbitrate according to a particular set of rules would mean little if the arbitrator could modify those rules by adding new rules derived from other sources. Despite the great deference given to arbitrators, when the arbitrator "base[s] his award on some body of thought, or feeling, or policy or law that is outside the contract . . . the award can be said not to draw its essence from the [parties agreement]. . . . In such cases the [United States] Supreme Court has said that the arbitrator is dispens[ing] his own brand of . . . justice. [*United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)]." (Citation omitted; internal quotation marks omitted.) *United Food & Commercial Workers, Local 1546* v. *Illinois-American Water Co.*, 569 F.3d 750, 755 (7th Cir. 2009). In *Stolt-Nielsen S. A.* v. *AnimalFeeds International Corp.* 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010), the United States Supreme Court held that an arbitral panel exceeded its authority when it interpreted an arbitration agreement to permit class arbitration while the agreement was silent as to whether class arbitration was permitted. Id., 672–73. The court reasoned that, although the arbitral panel was empowered to interpret the terms of the arbitration agreement, the silence of the arbitration agreement did not authorize the panel to "[proceed] as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation." Id., 673–74. In the present case, the arbitrator imposed a sanction on Ahmed that was not authorized by any reasonable interpretation of the AAA rule governing sanctions. In so doing, he exceeded the authority that was conferred on him by the arbitration clause in the parties' agreement to conduct an arbitration according to the AAA rules.

The majority concludes that the arbitrator's authority to deprive Ahmed of his express rights under the arbitra-

226 OCTOBER, 2023 348 Conn. 152

Ahmed *v.* Oak Management Corp.

tion clause in the parties' agreement derives from AAA Rule R-47 (a), which provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." There are two reasons why Rule R-47 (a) does not authorize the arbitrator's conduct in this case. First, Rule R-47 (a) governs the relief that the arbitrator may grant in the award;[6] it confers no authority on the arbitrator to ignore the ground rules the parties' have set up to ensure a fair hearing and to limit the arbitrator's authority to act. One need look no further than the cases cited in the majority opinion to understand that Rule R-47 (a) is concerned only with the type of relief that the arbitrator can include in the final award *after a hearing on the merits of the parties' respective claims*. All but one of the cases cited by the majority concerned the arbitrator's authority under Rule R-47 (a) to award attorney's fees, punitive damages, or other monetary sanctions as part of the final award. See *Wisconsin Automated Machinery Corp.* v. *Diehl Woodworking Machinery, Inc.*, Docket No. 07 C 6840, 2008 WL 4889012, *4–5 (N.D. Ill. August 7, 2008); *In re Matter of Arbitration Between Prudential-Bache Securities, Inc. & Depew*, 814 F. Supp. 1081, 1083 (M.D. Fla. 1993); *Willoughby Roofing & Supply Co.* v. *Kajima International, Inc.*, 598 F. Supp. 353, 357 (N.D. Ala. 1984), aff'd, 776 F.2d 269 (11th Cir. 1985); *Superadio Ltd. Partnership* v. *Winstar Radio Productions, LLC*, 446 Mass. 330, 337–39, 844 N.E.2d 246 (2006); *Clark* v. *Garratt & Bachand, P.C.*, Docket No. 344676, 2019 WL 3941493, *3 (Mich. App. August 20, 2019); *Minerals Development & Supply Co.* v. *Superior Silica Sands, LLC*, Docket No. 2012AP2328, 2013 WL 594332, *9 (Wis.

---

[6] Ballentine's Law Dictionary defines "award" in relevant part as "[t]he decision, decree, or judgment of arbitrators determining the disputed matter submitted to them." Ballentine's Law Dictionary (3d Ed. 1969) p. 116.

Ahmed *v.* Oak Management Corp.

App. November 7, 2013) (decision without published opinion, 352 Wis. 2d 246, 841 N.W.2d 580), review denied, 354 Wis. 2d 862, 848 N.W.2d 858, cert. denied, 574 U.S. 873, 135 S. Ct. 246, 190 L. Ed. 2d 137 (2014). Another concerned whether the arbitrator could order specific performance in lieu of awarding damages. See *Schmidt* v. *Schmidt*, Docket No. 1 CA-CV 12-0701, 2014 WL 3882178, *6–7 (Ariz. App. August 5, 2014). None of the cases, however, involved an arbitrator's refusal to hear evidence or to conduct a hearing or failure to abide by express contractual provisions limiting the arbitrator's authority to impose punitive sanctions.

Second, even if AAA Rule R-47 (a) reasonably could be construed as authorizing the arbitrator to issue orders related to the conduct of the arbitration, it does not grant the arbitrator any authority to violate the other AAA rules. By its express terms, Rule R-47 (a) requires that the arbitrator's orders comply with the explicit directives contained in the arbitration agreement, which, in this case, incorporates the AAA rules. Any relief afforded under Rule R-47 (a) must therefore comply with those rules in order to be "within the scope of the agreement of the parties . . . ." AAA Rule R-47; see, e.g., *International Union, United Mine Workers of America* v. *Marrowbone Development Co.*, supra, 232 F.3d 389 (vacating arbitral award as outside scope of arbitration agreement when arbitrator failed to conduct evidentiary hearing in contravention of contract provision that he "conduct a hearing in order to . . . receive evidence" (internal quotation marks omitted)); *Local 1199, Drug, Hospital & Health Care Employees Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, supra, 956 F.2d 25 (arbitrator "may not impose a remedy [that] directly contradicts the express language of the collective bargaining agreement" (internal quotation marks omitted)).

In response, the majority relies on the oft cited principle that courts may not set aside an arbitrator's award

Ahmed *v.* Oak Management Corp.

simply because he "committed serious error, or the decision is incorrect or even whacky." (Internal quotation marks omitted.) *Johnson Controls, Inc.* v. *Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013). "Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." (Internal quotation marks omitted.) Id., 1026. Thus, so long as an arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (Internal quotation marks omitted.) *Major League Baseball Players Assn.* v. *Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001).

The majority's reliance on that principle is misplaced. Although courts defer to the factual and legal determinations of the arbitrator on the merits, they also "rigorously enforce" the terms of the arbitration agreement, including the arbitral rules specified by the parties. (Internal quotation marks omitted.) *American Express Co.* v. *Italian Colors Restaurant*, supra, 570 U.S. 233. It is "[p]recisely because arbitration awards are subject to such judicial deference . . . [that] it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded." *Goldfinger* v. *Lisker*, 68 N.Y.2d 225, 231, 500 N.E.2d 857, 508 N.Y.S.2d 159 (1986). "Even with an unrestricted submission . . . it is well settled that the award may be reviewed to determine if the arbitrators exceeded their authority . . . ." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 84. "The standard [of review in such circumstances] requires what we have termed in effect, de novo judicial review." (Internal quotation marks omitted.) Id. When an arbitration agreement incorporates specific guidelines meant to ensure that the parties have an equal opportunity to be heard and are otherwise treated fairly, an arbitrator

Ahmed *v.* Oak Management Corp.

who violates them is not acting within the scope of his authority, and, therefore, the resulting orders are entitled to no deference. See, e.g., *California Union Square L.P.* v. *Saks & Co.*, *LLC*, 50 Cal. App. 5th 340, 349, 263 Cal. Rptr. 3d 841 (2020) (when arbitrator's ruling is contrary to express contractual provisions, it is not within scope of agreement, and "the warnings . . . concerning the limitations on judicial power over arbitration awards are [simply] not applicable" (internal quotation marks omitted)); *In re New York State Law Enforcement Officers Union*, *District Council 82*, *AFSCME*, *AFL-CIO*, 34 App. Div. 3d 1161, 1162, 824 N.Y.S.2d 800 (2006) ("[t]hese clear contractual provisions [requiring proof by a preponderance of the evidence] were ignored, not interpreted, by the arbitrator so [the court] did not substitute its interpretation of the contract for that of the arbitrator").

Parties entering into an arbitration agreement do so with the expectation that the rules they set for the arbitrator will be respected. See, e.g., *Nussbaum* v. *Kimberly Timbers*, *Ltd.*, supra, 271 Conn. 72 ("[i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed" (internal quotation marks omitted)). "To confirm an arbitration award in excess of the powers granted by an arbitration agreement would destroy the very purpose of arbitration and be contrary to the sound policy of encouraging the settlement of private disputes by the voluntary agreement of the parties." (Internal quotation marks omitted.) *California Union Square L.P.* v. *Saks & Co.*, *LLC*, supra, 50 Cal. App. 5th 349. Thus, "the cases establish one bright-line rule: arbitrators may not award a remedy that conflicts with express terms of the arbitrated contract. To the extent this means arbitrators may not award remedies expressly forbidden by the arbitration agreement or submission, the point is well taken. How the violation

Ahmed *v.* Oak Management Corp.

of an express and explicit restriction on the arbitrator's power . . . could be considered rationally related to a plausible interpretation of the agreement is difficult to see.'' (Citation omitted; internal quotation marks omitted.) *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 9 Cal. 4th 362, 381–82, 885 P.2d 994, 36 Cal. Rptr. 2d 581 (1994). In the present case, the process Ahmed received fell far short of the process for which he had bargained. He was prevented from viewing the evidence presented against him. He was prevented from offering any evidence in his own defense or arguing the merits of his case. He was subjected to these conditions without being given the opportunity to be heard on whether they should be applied. ''No party agreeing to arbitration bargained for a proceeding such as this, and nothing in our precedent compels us to ignore these facts.'' *Costco Wholesale Corp.* v. *International Brotherhood of Teamsters, Local No. 542*, 850 Fed. Appx. 467, 469 (9th Cir. 2021).

In reaching a contrary conclusion, the majority casts Ahmed's claims in extremely narrow terms, asserting, for example, that ''[his] excess of authority claim . . . rests on the premise that equitable relief is 'within the scope of the arbitration agreement of the parties' under AAA Rule R-47 (a) *only if the agreement expressly authorizes that relief*.'' (Emphasis added.) The majority also asserts that, ''[b]ecause no express language of the agreement authorizes application of the fugitive disentitlement doctrine, Ahmed claims that its application is contrary to laws and rules incorporated into the agreement.''

Throughout his appellate brief, Ahmed asserts that the arbitration award must be vacated because the arbitrator's disentitlement order contravened numerous express provisions of the parties' employment agreement —''specific AAA rule[s] setting forth specific, affirmative procedural requisites for arbitration.'' He further

Ahmed *v.* Oak Management Corp.

contends: "Unsurprisingly, Oak does not, and cannot, point to any provision of [the] employment agreement that would authorize a total due process deprivation. To the contrary, the arbitration clause provides that 'any arbitration procedures required by applicable federal or state law' 'shall govern' in any conflict. . . . The governing law clearly requires arbitrators to accord parties the procedural rights refused to . . . Ahmed. See [Del. Code Ann tit. 10, § 5706 (2) (2013)] ('[u]nless otherwise provided by the agreement . . . [t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing'); [see also General Statutes] § 52-418 (a) (3) (arbitrators required to 'hear evidence pertinent and material to the controversy' and to avoid actions 'by which the rights of any party' are 'prejudiced'); 9 U.S.C. § 10 (a) (3) [2018] (same). Application of the [fugitive] disentitlement doctrine thus violated the parties' [agreement]." (Citation omitted.) Ahmed further argues that the arbitrator, under the guise of fashioning an award, ignored "AAA rule[s] setting forth specific, affirmative procedural requisites for arbitration. . . . [Rule R-22]—the AAA rule that [Rule R-23] was designed to enforce—specifically establishes that arbitrators are affirmatively required to [safeguard] each party's opportunity to fairly present its claims and defenses. . . . Plainly, the opposite happened here. Critically, in addition to the foregoing, [Rule R-32 (a)] instructs that, although [t]he arbitrator has the discretion to vary the procedure of an arbitral proceeding, his discretion is cabined by the requirement that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

I disagree with the majority's assertion that, "although Ahmed mentions in his brief to this court the United

Ahmed *v.* Oak Management Corp.

States Supreme Court's reference to the 'sanction of disentitlement' in his discussion of *Degen* v. *United States*, 517 U.S. 820, 828, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996), he does not characterize the [fugitive disentitlement] doctrine as a sanction that would be governed by the conditions for imposing sanctions contained in AAA Rule R-58 . . . .'' When Ahmed describes the arbitrator's ruling as ''a total due process deprivation,'' it advances his contention that the order constituted an extreme sanction. The same is true when he asserts: ''Oak was unable to identify a single Delaware case supporting the breadth of disentitlement ordered here. . . . Ahmed did not engage in any wrongdoing in the arbitration warranting the imposition of a sanction—and, critically, the arbitrator never said he did.'' (Emphasis omitted.) In sum, Ahmed has argued that the arbitrator's order stripping him of his right to participate in the arbitration was a severe sanction unwarranted by anything he did during the proceedings.

The majority contends that my concerns regarding the arbitrator's failure to abide by the arbitration clause in the parties' agreement can be sidestepped because Ahmed presents his claim of error to this court without mentioning AAA Rule R-58 by name or specifically referring to its contents. Although I understand the legitimate concerns underlying the majority's point, I do not agree that we can or should ignore the rule violations at issue, which are plainly subsumed within Ahmed's claim that the arbitrator ''exceeded his authority'' under ''the AAA rules'' by ''impos[ing] . . . a sanction'' for conduct other than ''wrongdoing in the arbitration . . . .'' Ahmed's failure to cite a particular rule is not fatal to his claim because ''it is well established that we may . . . review legal arguments that differ from those raised by the parties if they are subsumed within or intertwined with arguments related to the legal claim before the court.'' (Internal quotation marks omitted.)

Ahmed *v.* Oak Management Corp.

*Meribear Productions*, *Inc.* v. *Frank*, 340 Conn. 711, 732, 265 A.3d 870 (2021). Ahmed's claim is that the arbitrator "exceeded his authority" by depriving him of his procedural rights under "the AAA rules." This claim is broad enough for us to consider all of the AAA rules that the arbitrator's conduct may have violated. It requires us to consider both whether the arbitrator's conduct violated any of the AAA rules and whether any AAA rule authorizes the arbitrator's conduct. In conducting this inquiry, we are not limited to the particular rules that are named by each party. Indeed, I do not see how it is possible for us to consider whether the arbitrator exceeded the scope of his authority under any of the rules without understanding the rules as a whole.

Ahmed has made this claim consistently throughout this litigation. In his application to vacate the arbitration award, which he submitted as a self-represented party, Ahmed argued that the award should be vacated because "[t]he arbitrator's powers are defined by and limited to the terms of the underlying agreement," and the arbitrator's decision was not authorized by the terms of the agreement, including AAA Rule R-47 (a). In his reply to Oak's opposition to his application to vacate, which he also submitted as a self-represented party, Ahmed clarified that "[t]here is no rule anywhere that says that [he] could not respond to dispositive motions. It would be a completely one-sided matter (which it was) to not allow responses or to not allow litigants to offer evidence in response to *dispositive* motions." (Emphasis in original.) For its part, Oak took a broad view of Ahmed's claim, describing it as a "kitchen sink filing," stating that "Ahmed claims that the arbitrator . . . exceeded his authority in [applying the fugitive disentitlement doctrine]" and arguing that "[t]aking the AAA rules and Delaware law together, it was plainly . . . within the scope of the arbitrator's

Ahmed *v.* Oak Management Corp.

authority to determine whether the doctrine applied here.'' In its filings, Oak refers repeatedly to ''the AAA rules'' in general as a source of authority for the arbitrator's actions, and Ahmed follows this practice in his brief on appeal. Consistent with the foregoing, during oral argument before this court, Ahmed's counsel argued that the arbitrator's actions violated the AAA rules in general, although he identified Rules R-23, R-32, and R-58 specifically. In fact, he argued that ''Rule R-58 expressly precludes'' the arbitrator's conduct in this case because ''there was no finding whatsoever that . . . Ahmed did anything sanctionable . . . .''[7] In short, there is no suggestion in these filings and arguments that the scope of Ahmed's claim, or Oak's reply, has ever been limited to particular AAA rules identified by number.

The fact that the arbitrator decided the case on a dispositive motion without allowing Ahmed any opportunity to be heard on that motion was emphasized by Ahmed multiple times in his application to vacate the arbitration award, was emphasized again in his reply to Oak's opposition to his application to vacate, is

_____

[7] During oral argument before the trial court, Ahmed's counsel made the identical argument, emphasizing AAA Rule R-58 specifically but relying on all of the AAA rules generally, stating: ''Similarly, the AAA rules, and I won't belabor each and every rule, but, just to give Your Honor a flavor of what the body of . . . [the] rules incorporated [in] the [parties'] agreement requires . . . [Rule R-58] says . . . the arbitrator may not enter a default award as a sanction. So, that's quite plain. What the arbitrator invoked was [Rule R-47 (a)], that's in our brief, but that rule requires that any remedy or relief . . . be within . . . the scope of the agreement of the parties. And, as I've just explained, neither the employment agreement itself nor the sources of law that it incorporates permit . . . such a [sanction] . . . . In fact, they expressly forbid such a sanction. So . . . as our brief also recites . . . the [AAA] rules also require safeguarding each party's procedural rights to examine evidence, present their case, [and] develop a full record. And I'll just quickly note . . . [that the] one rule [that] . . . give[s] the arbitrator . . . the discretion to vary the procedure . . . [does so] provided that the parties are treated with equality that each party has the right to be heard and is given a fair opportunity to present its case.''

Ahmed *v.* Oak Management Corp.

quoted on the very first page of the trial court's memorandum of decision, and is raised repeatedly in his brief on appeal. Against this background, the majority's contention that this fact should be disregarded because it enters the case only through "a single sentence footnote in Ahmed's brief" is difficult to understand.[8]

Because I conclude that the arbitrator exceeded his authority under the arbitration clause in the parties' agreement by denying Ahmed his procedural right to assert claims, to present evidence, and to contest Oak's claims in clear violation of the AAA rules, I would reverse the judgment of the trial court and remand the case to that court with direction to vacate the arbitration award. The case law makes clear that, when an

[8] Even if Ahmed had not made the argument in this case, I disagree with the majority's assertion that the distinction in *Meribear Productions*, *Inc.*, between claims and arguments does not apply in cases involving arbitration. The two cases the majority cites for support address entirely different issues. In *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 757 A.2d 501 (2000), this court concluded that "an arbitral award that requires the employer to reinstate an employee who has been terminated following his conviction, [on] the basis of . . . a plea [of nolo contendere], of embezzling the employer's funds, violates public policy." Id., 48. In support of that conclusion, we noted that, although a nolo contendere plea is not generally admissible to establish guilt in a court, it may be considered in an employment arbitration because of the "legitimate expectations of the employer that are inherent in the employment context and that would be severely undermined by requiring the reinstatement of an employee convicted of embezzling his employer's funds"; id., 51; and because the limits that are placed on the use of nolo contendere pleas by courts should not "necessarily" be extended to arbitration given the private nature of arbitration and our "deference to the arbitrator's factual determinations." Id., 52. In *Blondeau* v. *Baltierra*, 337 Conn. 127, 252 A.3d 317 (2020), this court concluded that "the arbitrator did not exceed her authority" in a family law arbitration. Id., 131. In neither of these cases is there any discussion of *Meribear Productions*, *Inc.*, of the power of an appellate court to raise arguments sua sponte, or of the preservation of claims and arguments for appeal. The only relevance of *Groton* or *Blondeau* appears to be their recognition that different procedural and evidentiary rules apply to courts and arbitrations (*Groton*) and that arbitral awards receive deferential review (*Blondeau*). They provide no authority, however, for the majority's contention that *Meribear Productions*, *Inc.*, does not apply to cases involving arbitration.

Ahmed *v.* Oak Management Corp.

arbitrator violates an arbitration agreement in the manner that occurred in this case, the resulting award has no legal sanction and must be vacated.

II

I also disagree with the majority that the arbitrator did not engage in misconduct under § 52-418 (a) (3) by denying Ahmed an opportunity to present evidence and argument at a hearing on the merits of the parties' respective claims. By its express terms, § 52-418 (a) (3) mandates that the arbitrator hear evidence from the parties that is "pertinent and material to the controversy . . . ." It also mandates vacatur of an arbitral award when the arbitrator engages in "any other action by which the rights of any party have been prejudiced . . . ." General Statutes § 52-418 (a) (3). Section 5706 of title 10 of the Delaware Code Annotated, which is a procedural, rather than a vacatur, statute,[9] confers procedural rights on parties to an arbitration. It expressly mandates that the arbitrator hold a hearing on the merits of the parties' dispute, and, upon complaint of one of the parties, it authorizes the court to intervene and order the arbitrator "to proceed promptly with the hearing . . . ." Del. Code Ann. tit. 10, § 5706 (1) (2013). Subdivision (2) of the statute further provides that, in addition to the right to be heard and to present material evidence, the parties are "entitled . . . to cross-examine witnesses appearing at the hearing." Del. Code Ann. tit. 10, § 5706 (2) (2013). Because the arbitrator in the present case did not conduct a hearing, much less allow Ahmed to present material evidence and to cross-examine Oak's witnesses, he deprived Ahmed of his rights under both Connecticut and Delaware law, and, therefore, he committed misconduct under § 52-418 (a) (3).

None of the cases cited by the majority supports the proposition that an arbitrator, *solely* on the basis of the

[9] See footnote 4 of this opinion.

Ahmed *v.* Oak Management Corp.

general grant of authority conferred on him by AAA Rule R-47 (a) to fashion an award, can deprive a party of his or her statutory right to a hearing, to present evidence, and to cross-examine witnesses. Indeed, if an arbitrator could do so, it would render the protections afforded under § 52-418 (a) (3) and § 5706 (2) of title 10 of the Delaware Code Annotated—the terms of which are cast in mandatory language—entirely illusory. Even if Rule R-47 (a) reasonably could be read so expansively, the parties' employment agreement expressly provides that, "[t]o the extent that any of the [AAA] [r]ules or anything in this arbitration clause conflicts with any arbitration procedures required by applicable federal or state law, the arbitration procedures required by applicable law shall govern." In this instance, therefore, the procedures mandated by § 5706 (1) and (2) of title 10 of the Delaware Code Annotated must govern.

In the present case, the arbitrator decided the case by applying the fugitive disentitlement doctrine without hearing from Ahmed or providing him with an opportunity to be heard on the issue. The arbitrator granted Oak's motion to apply the fugitive disentitlement doctrine before hearing from Ahmed and before the June 8, 2020 deadline that had been set for Ahmed's response to other motions. It was in every sense an ex parte ruling because the arbitrator granted Oak's motion without providing Ahmed an opportunity to respond.

Federal and state courts have consistently held that vacatur is warranted when the arbitration proceedings were fundamentally unfair. See, e.g., *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013).[10] They also "agree that a

[10] "Federal case law is instructive on this issue because . . . § 52-418 (a) (3) essentially tracks the language of the federal statute governing arbitral misconduct." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 150 n.12, 523 A.2d 1271 (1987); see 9 U.S.C. § 10 (a) (3) (2018). New York law is similarly instructive because it contains a

Ahmed *v.* Oak Management Corp.

fundamentally fair hearing requires . . . [an] opportunity to be heard . . . .'' *Bowles Financial Group, Inc.* v. *Stifel, Nicolaus & Co.*, supra, 22 F.3d 1013. ''[A]n arbitration award will [therefore] be vacated when the parties have agreed to a hearing yet one of the parties has been denied the opportunity to be heard . . . .'' *MasTec North America, Inc.* v. *MSE Power Systems, Inc.*, 581 F. Supp. 2d 321, 327 (N.D.N.Y. 2008). Delaware law, which was specifically chosen by the parties in this case to govern their arbitration, is clear that, even in arbitration, ''[t]he parties are entitled to be heard . . . .'' Del. Code Ann. tit. 10, § 5706 (2) (2013). This principle of basic legal fairness has been applied to arbitrations for more than 100 years. See, e.g., *Stockwell* v. *Equitable Fire & Marine Ins. Co. of Providence, R.I.*, 134 Cal. App. 534, 541, 25 P.2d 873 (1933) (''although arbitrators are not bound by strict rules of evidence, they cannot transgress that fundamental principle of justice which declares that no man shall be condemned without the opportunity of being heard'' (internal quotation marks omitted)); *Cassara* v. *Wofford*, 55 So. 2d 102, 106 (Fla. 1951) (''it is universally held that in arbitration proceedings . . . persons whose rights and obligations are affected thereby have an absolute right to be heard and to present their evidence, after reasonable notice of the time and place of the hearing''); *Thornton* v. *Thornton*, 159 S.W. 532, 534 (Ky. 1913) (''we cannot sanction [an arbitral award] rendered in . . . an ex parte proceeding [when] one party has had no opportunity to controvert the evidence of his adversary taken in his absence''); *Page* v. *Ranstead*, 92 Mass. (10 Allen) 295, 298 (1865) (''[t]here is no question of the correctness of the general proposition, that when a case is submitted to arbitration, it is the duty of the arbitrator

statute that mirrors the language of § 5706 of title 10 of the Delaware Code Annotated. See N.Y. C.P.L.R. 7506 (c) (McKinney 2013) (''[t]he parties are entitled to be heard, to present evidence and to cross-examine witnesses'').

Ahmed *v.* Oak Management Corp.

to give the parties an opportunity to be heard, if they
desire it, before making an award''). The principle is
even afforded its own illustration in the proposed final
draft of the Restatement (Third) of the U.S. Law of
International Commercial and Investor-State Arbitra-
tion. See Restatement (Third), U.S. Law of International
Commercial and Investor-State Arbitration § 4.19, illus-
tration (3) p. 707 (Proposed Final Draft 2019) (''Over
the objection of *B*, an arbitral tribunal decides on the
strength of *A*'s written submissions alone to issue an
award in favor of *A* without permitting counter-submis-
sions by *B*. *A* seeks to enforce the award, and *B* chal-
lenges the award on the ground that the arbitral tribunal
committed misconduct in refusing to permit counter-
submissions. A court may refuse to enforce the award.'').

The principle that each party is entitled to an opportu-
nity to be heard is so fundamental to our conception
of fairness that it is a rare case in which it is trans-
gressed. When it is violated, vacatur is consistently the
result. For example, in one case, a procedural oversight
led an arbitral panel to rule in favor of the petitioner,
without affording the respondent an opportunity to
present his case on the merits. *In re Arbitration of
Certain Controversies Between Cofinco, Inc., & Bak-
rie & Bros., N. V.*, 395 F. Supp. 613, 614–15 (S.D.N.Y.
1975) (*Cofinco, Inc.*). The District Court held that,
although ''the [AAA] rules strongly [support] arbitral
judgments as final within the province the parties have
given to their chosen forum [and] only a miniscule pro-
portion of awards is vulnerable in court . . . [t]he
award . . . falls squarely and patently within this
minute class.'' Id., 615.[11] In another case, also conducted

[11] This precedent has been recognized in Connecticut and distinguished
by the fact that the respondent in *Cofinco, Inc.*, ''never had an opportunity
to present evidence on the merits.'' *Media Group, Inc.* v. *Notaro*, Docket
Nos. CV-02-0187595 and CV-02-0189157, 2002 WL 31898214, *3 (Conn. Super.
December 13, 2002).

Ahmed *v.* Oak Management Corp.

under the AAA rules, an arbitral panel entered a preclusion order barring one party from participating in the case. *Coty Inc.* v. *Anchor Construction, Inc.*, Docket No. 601499-02, 2003 WL 139551, *2 (N.Y. Sup. January 8, 2003), aff'd, 7 App. Div. 3d 438, 776 N.Y.S.2d 795 (2004). The reviewing court held that "[d]ue process in arbitration means satisfying 'minimal requirements of fairness' " and that the preclusion order violated fundamental fairness by denying a party "the opportunity to be heard . . . ." Id., *7. In a third case, a "[u]nion was not given an opportunity to complete its presentation of proof regarding the arbitrability and/or merits of the grievances then under consideration." *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 506* v. *E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982), aff'd, 742 F.2d 1441 (2d Cir. 1983). The District Court held that, because "the [u]nion was not given the chance to present its case in full, the subject awards cannot stand." Id. The majority has not identified any case in which a court has enforced an arbitral award that was decided on an ex parte dispositive motion, without allowing each side an opportunity to be heard.

Even if we were to defer to the arbitrator's decision to apply the fugitive disentitlement doctrine, there can be no justification for the arbitrator's failure to permit Ahmed an opportunity to be heard on whether the doctrine should be applied. The arbitrator offered no such justification in his order applying the doctrine; nor can one be found in the doctrine itself. There is no authority for the proposition that the fugitive disentitlement doctrine can be applied without providing each side an opportunity to be heard on whether the doctrine should be applied. This court has established a burden shifting framework for applying the doctrine that explicitly contemplates that each side will have an opportunity to be heard. See *State* v. *Brabham*, 301 Conn. 376, 386, 21 A.3d 800 (2011).

Ahmed *v.* Oak Management Corp.

The majority concludes that, even if the arbitrator engaged in misconduct within the meaning of § 52-418 (a) (3), Ahmed has failed to establish that he was prejudiced by the arbitrator's actions. To demonstrate prejudice in Connecticut, Ahmed was required to show that the "ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 476–77, 899 A.2d 523 (2006). The majority concludes that Ahmed has failed to meet this burden because "[h]is brief to this court identifies no evidence, documentary or testimonial, that he had been prepared to offer if a hearing on liability had taken place. He makes no representation that he would have testified as to any specific material fact that could have cast doubt on his culpability for the acts alleged. Nor does he claim that he had any other basis, through cross-examination or otherwise, to impeach Oak's allegations." I disagree.

As an initial matter, a ruling on a dispositive motion that decides the issue of liability certainly affects the case. The arbitrator's application of the fugitive disentitlement doctrine not only affected the result, in a very real sense, it was the result. This is not a case in which the excluded testimony of a particular witness or a single ex parte email between the arbitrator and counsel may or may not have altered the course of the proceedings. Instead, the arbitrator, in one fell swoop, decided the issue of liability against a party as a sanction, without hearing evidence or receiving written briefing from the party whose case was declared over before it began. There can be no doubt that the result of the arbitration was dictated by the application of the fugitive disentitlement doctrine. The arbitrator's decision to apply the doctrine ex parte, without allowing Ahmed an opportunity to respond, plainly affected the result of the arbitration.

242 OCTOBER, 2023 348 Conn. 152

Ahmed *v.* Oak Management Corp.

The majority requires Ahmed to identify evidence and arguments that he would have made on the merits had his case not been improperly dismissed. To require this sort of explanation before vacating an arbitral award issued in an arbitration proceeding that was dismissed before a hearing on the merits would subvert the interests of judicial economy that arbitration is meant to promote. To show prejudice, it is enough that the arbitrator exceeded his authority by deciding the case on an ex parte dispositive motion in contravention of the AAA rules specified by the arbitration agreement.[12]

None of the three cases discussed previously, vacating arbitral awards for a denial of the opportunity to be heard, required details of the specific evidence and arguments that either party would have presented on the merits, and none of them required proof that, but for the denial of the opportunity to be heard, the arbitrator(s) would have reached a different result on the merits. See *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 506* v. *E.D. Clapp Corp.*, supra, 551 F. Supp. 578 (vacating award without considering details of arguments and evidence not presented or either party's likelihood of success on merits); *In re Certain Controversies Between Cofinco, Inc., & Bakrie & Bros., N. V.*, supra, 395 F. Supp. 616 (vacating award and remanding to arbitration panel for new hear-

_____

[12] The majority concludes that Ahmed would have been defaulted on the merits anyway because he failed to attend the damages hearing that was held on July 21, 2020. The difficulty with this conclusion is that it holds Ahmed responsible for conduct that never occurred as a result of the very order under review, which barred him from contesting liability. It is for good reason that Ahmed does not, in the words of the majority, "make the bizarre contention that (a) he would not have claimed to be unable to attend a [July 21, 2020] hearing had the hearing proceeded as one for liability rather than damages, or (b) he still would have claimed to have been unable to attend but nonetheless would have attended if the hearing was to determine liability." Such a contention would indeed be bizarre because we do not require a party to prove prejudice by means of hypothetical speculation in a case that was erroneously decided against him.

Ahmed *v.* Oak Management Corp.

ing without considering details of arguments and evidence not presented or either party's likelihood of success on merits); *Coty Inc.* v. *Anchor Construction, Inc.*, supra, 2003 WL 139551, *4, *12 (vacating award and remanding to arbitration panel for new hearing without considering details of arguments and evidence not presented or either party's likelihood of success, and noting that "the record does not clearly demonstrate what evidence was precluded").

Courts that have considered similar or lesser procedural claims under comparable or identical statutes have likewise held that deprivations of the type that occurred in the present case are prejudicial per se, requiring vacatur as a matter of law. See, e.g., *United States Life Ins. Co.* v. *Superior National Ins. Co.*, 591 F.3d 1167, 1174 (9th Cir. 2010) (under applicable statute, "the phrase 'refusing to hear evidence pertinent and material to the controversy' necessarily implies prejudice to the rights of a party, without regard to the final catch-all phrase"); *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) ("although not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument" (internal quotation marks omitted)); *Talel Corp.* v. *Shimonovitch*, 84 So. 3d 1192, 1194 (Fla. App. 2012) ("the failure of arbitrators to give notice and an opportunity to be heard is such misconduct or misbehavior as will vitiate an award, irrespective of the fact that there may have been no corrupt intention on the part of the arbitrators" (internal quotation marks omitted)); *Talel Corp.* v. *Shimonovitch*, supra, 1194 ("[b]y failing to hold a hearing on unliquidated damages, the arbitrator refused to hear evidence material to the controversy and thereby prejudiced substantially the rights of the defendants" (internal quotation marks omitted)); *Heartland Surgical Specialty Hospital, LLC* v. *Reed*,

Ahmed *v.* Oak Management Corp.

48 Kan. App. 2d 237, 246, 287 P.3d 933 (2012) ("courts [are required] to vacate an arbitration award if the arbitrator(s) failed to conduct a hearing as provided under [the applicable statute]"); *Graham* v. *Wall*, 938 S.W.2d 892, 893 (Ky. App. 1997) ("[When] the arbitration agreement does not contain an express waiver of a hearing the parties are entitled [by statute] to an opportunity to be heard, [to] present evidence, and [to] cross-examine witnesses . . . . Because the arbitrators' decision is procedurally flawed, we do not address the substantive issues raised. This case is reversed and remanded and . . . the arbitrators [are ordered to] conduct a hearing in accordance with [the applicable statue]." (Citations omitted.)); *Volkmann* v. *Volkmann*, 688 N.W.2d 347, 348–49 (Minn. App. 2004) (Under applicable statute, "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses. . . . Not allowing one party to hear, respond to, or cross-examine the other constitutes conduct that prejudice[s] substantially the rights of a party." (Citation omitted; internal quotation marks omitted.)); *Bates* v. *McQueen*, 270 Va. 95, 102–103, 613 S.E.2d 566 (2005) ("[A]s the parties stipulated, there was no hearing before the arbitrators . . . . Without the hearing having taken place, it was not necessary for [the appellant] to prove that his rights were substantially prejudice[d] or that evidence he would have presented was material to the controversy in order to have the arbitration award vacated under [the applicable statute]. . . . In short, the failure to conduct [a] hearing . . . was tantamount to no arbitration. Unless parties agree otherwise, a hearing is a fundamental part of the arbitration process because [t]he arbitrators are the final judges of both law and fact, their award not being subject to reversal for a mistake of either." (Citations omitted; internal quotation marks omitted.)); see also *Gainesville* v. *Communications Workers of America*,

Ahmed *v.* Oak Management Corp.

*Local No. 3170*, Docket No. 1D21-32, 2022 WL 1089250, *3 (Fla. App. March 23, 2022) ("The arbitrator's summary disposition of the claim substantially prejudiced the [u]nion's rights because the [u]nion never got a full hearing with a chance to present evidence. . . . The [c]ity . . . contends that no prejudice could have resulted, stressing that the [u]nion has yet to present any evidence that would have changed the result. But the [c]ity cites nothing that requires a party to prove as much to establish substantial prejudice. Taking the [c]ity's proposed rule to its logical extent, a party could never be prejudiced when an arbitrator decides an issue 'as a matter of law.' In other words, an arbitrator could immediately decide a case, without notice, consent, or a hearing, and the losing party would be without recourse just because the nature of the arbitrator's decision precludes hearing evidence. This rule would directly contradict the basic principle that parties are entitled to a 'fundamentally fair hearing' which includes 'an opportunity to be heard and to present evidence.' ").

Even if Ahmed were required to demonstrate prejudice above and beyond the denial of a hearing, as the majority contends, he has met that burden. The majority concludes that Ahmed has failed to satisfy his burden because he does not argue on appeal that the arbitrator's refusal to hold a hearing on liability was prejudicial. Once again, I disagree with the majority's reading of Ahmed's brief to this court. Contrary to the majority's assertion, in his brief, Ahmed argues that the arbitrator's actions deprived him of the right to recover $35 million of personal assets that were held in an account at Oak. As the trial court explained, "[i]n connection with his termination, [Oak] claimed a contractual right to seize certain vested assets earned by [Ahmed] but which were still in [Oak's] possession. These assets were deemed forfeited to [Oak] based on [Oak's] interpretation of its contractual rights." The trial court further explained

Ahmed *v.* Oak Management Corp.

that, because of the arbitrator's disentitlement order, "[t]here has been no adjudication relating to the propriety of the forfeiture," which Ahmed had raised as a counterclaim in the arbitration case.[13] In his brief, Ahmed argues that, "[a]s a disputed issue of contract bearing directly on Oak's recovery in the arbitration, [he] had every right to challenge the seizure [of that money], either as a counterclaim or otherwise." Because of the arbitrator's actions, however, Ahmed was denied the opportunity to litigate that claim. Ahmed further argues that, "[h]ad [he] been allowed to testify at the liability hearing, he would have been able to offer further evidence of Oak's complicity [in the alleged fraud], including the fact that Oak's management exercised little to no supervision of his activities, and the fact that Oak regularly received money from Ahmed's personal account and yet wilfully did not question the source of those funds for over eleven years." This testimony bore directly on Ahmed's defenses of laches and unclean hands, among others, and on whether the facts of the case supported an award of punitive damages. In light of the foregoing, Ahmed has demonstrated that he was prejudiced by the disentitlement order.

In *Seagate Technology, LLC* v. *Western Digital Corp.*, supra, 854 N.W.2d 750, the Minnesota Supreme Court considered a similar challenge to an arbitration award under § 572.19, subd. 1 (3) and (4), of the Minnesota Statutes,[14] the language of which is nearly identical to

_____

[13] As summarized by the trial court, "[Ahmed's] response [to Oak's statement of claims in the arbitration proceeding] asserted numerous defenses directed to both liability and damages (including laches, contributory negligence and set-off), as well counterclaims, most notably seeking restoration of the assets that [Oak] had treated as forfeited." The arbitrator dismissed Ahmed's counterclaims as part of the disentitlement order. Notably, in that same order, the arbitrator denied Ahmed's motion for summary judgment on the ground that the facts underlying his claims, including his forfeiture claim, were disputed.

[14] Section 572.19, subd. 1, of the Minnesota Statutes (2010) provides in relevant part: "Upon application of a party, the court shall vacate an award where . . . (3) The arbitrators exceeded their powers [or] (4) The arbitra-

Ahmed *v.* Oak Management Corp.

Connecticut's and Delaware's statutes. The plaintiff in
that case, Seagate Technology, LLC, commenced an
arbitration proceeding against the defendants, Sining
Mao, a former employee, and Western Digital Corpora-
tion (Western Digital), Mao's new employer, seeking to
recover damages for Western Digital and Mao's misap-
propriation of the plaintiff's trade secrets. Id., 753–54.
Prior to the arbitration hearing, the plaintiff filed a
motion for punitive sanctions based on Mao's alleged
fabrication of evidence. Id., 755. Specifically, the plain-
tiff requested an order precluding Western Digital and
Mao from presenting any evidence or defense that dis-
puted the validity of the plaintiff's asserted trade secrets,
the misappropriation of those trade secrets, or that
Western Digital had used those trade secrets. Id. West-
ern Digital and Mao responded by requesting that the
arbitrator defer action on the motion until the arbitra-
tion hearing concluded, which request the arbitrator
granted. Id.

Following the hearing, the arbitrator "concluded that
Mao's fabrication of evidence and Western Digital's
complicity by submitting the obviously fabricated evi-
dence to the [a]rbitrator [were] an egregious form of
litigation misconduct and warrant[ed] severe sanctions.
The arbitrator then cited *Harris Trust & Savings Bank*
v. *Ali*, [100 Ill. App. 3d 1, 10, 425 N.E.2d 1359] (1981),
[for the proposition] that [w]hen evidence is . . . fabri-
cated, a presumption arises that the cause of action
or the defense it was intended to support is without
substantial foundation. . . . The arbitrator imposed
the following sanctions against Western Digital and

tors refused . . . to hear evidence material to the controversy or otherwise
so conducted the hearing, contrary to the provisions of section 572.12, as
to prejudice substantially the rights of a party . . . ."

Section 572.12 of the Minnesota Statutes (2010) provides in relevant part:
"Unless otherwise provided by agreement . . . (b) [t]he parties are entitled
to be heard, to present evidence material to the controversy and to cross-
examine witnesses appearing at the hearing."

Ahmed *v.* Oak Management Corp.

Mao: [1] [p]reclusion of any evidence or defense . . . disputing the validity of [certain of the plaintiff's trade secrets] . . . [2] [p]reclusion of any evidence or defense . . . regarding misappropriation by Western Digital and Mao of [those trade secrets] . . . [3] [p]reclusion of any evidence or defense by Western Digital disputing that it has used or is using [the trade secrets] . . . in Western Digital's manufactured [products] . . . and [4] [e]ntry of judgment against Western Digital and [Mao as to] liability for misappropriation and use of [the trade secrets] . . . .'' (Internal quotation marks omitted.) *Seagate Technology, LLC* v. *Western Digital Corp.*, supra, 854 N.W.2d 755–56.

On appeal to the Minnesota Supreme Court, Western Digital and Mao argued that (1) the arbitrator exceeded his authority under the parties' arbitration agreement in violation of § 572.19, subd. 1 (3), of the Minnesota Statutes by issuing the punitive sanctions; id., 760; and (2) the sanctions ''violated the arbitrator's duty [under § 572.19, subd. 1 (4), of the Minnesota Statutes] to hear material evidence.'' Id., 766. With respect to the first claim, the court concluded that the sanctions ''were . . . authorized by the AAA [rules], which were incorporated into the arbitration agreement and allow[ed] the arbitrator to grant 'any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs.' '' Id., 763. Specifically, the court reasoned that ''punitive sanctions fall within the ordinary meaning of relief. Punitive sanctions can also be properly construed as a remedy. . . . [T]he sanctions [in question] were issued in part to redress a wrong, the fabrication of evidence, which harmed [the plaintiff] during the arbitration. Thus, the sanctions constitute a remedy provided to [the plaintiff].'' (Citation omitted.) Id.

In reaching its determination, the court was careful to note that ''[t]he arbitrator's ability to issue punitive

Ahmed *v.* Oak Management Corp.

sanctions is controlled by the arbitration agreement.
. . . Therefore, parties are able to include or exclude
the use of punitive sanctions when constructing an arbi-
tration agreement, either through express provision or
through the incorporation of a particular set of arbitra-
tion rules.'' (Citation omitted.) Id., 761. The court cited
AAA Rule R-58 (a) as an example of an express contract
provision delineating the circumstances under which an
arbitrator may impose punitive sanctions. Id., 761 n.8.
Because, unlike the arbitration agreement in the present
case, the agreement in *Seagate Technology*, *LLC*, did
not contain a rule limiting the arbitrator's authority to
impose sanctions, the court concluded that the arbitra-
tor could issue the sanctions in question under the
arbitrator's general authority to fashion relief. Id., 763.

Significantly, in deciding the second claim, the court
did not rely on the arbitrator's general grant of authority
as a basis for upholding the denial of Western Digital
and Mao's *statutory* right to present material evidence.
Rather, the court concluded that the arbitrator's actions
did not violate § 572.19, subd. 1 (4), of the Minnesota
Statutes because the arbitrator ''heard the challenged
evidence at the request of Western Digital and Mao and
conducted the hearing in accordance with [§ 572.12 of
the Minnesota Statutes], which requires that the parties
be heard, be allowed to present evidence material to
the controversy, and be allowed to cross-examine the
witnesses appearing at the hearing. Western Digital and
Mao's challenge, therefore, centers not around the
admission of evidence, but rather around the arbitra-
tor's failure to use that evidence when constructing the
final award. This challenge differs from our previous
case law concerning an arbitrator's refusal to hear evi-
dence, which has generally involved preventing a party
from testifying or submitting certain evidence. . . .

''The scope of [§ 572.19, subd. 1 (4), of the Minnesota
Statutes] is properly limited to situations involving the

Ahmed *v.* Oak Management Corp.

presentation and admission of evidence at the hearing, not situations involving the use or weighing of evidence in constructing the final award or other form of relief.'' (Citation omitted.) Id., 766. The court further stated that ''the entire focus of these statutes is [on] how the hearing itself should be conducted, not the deliberation process that happens after the hearing.'' Id.

Thus, the court concluded that ''it is appropriate to read [§ 572.19, subd. 1 (4), of the Minnesota Statutes] as a provision concerned with the . . . manner in which the hearing is conducted, not as a provision limiting the arbitrator's authority to use, or [to] refuse to use, certain evidence when providing relief or fashioning an award after the hearing has been completed. . . . Western Digital and Mao do not challenge any of the arbitrator's actions during the hearing, as [they] were allowed to present their case in full and the arbitrator received the evidence in question. But the arbitrator chose not to factor this evidence into the final award because of sanctions that were [imposed] and . . . were permissible as within the arbitrator's authority. In short, Western Digital and Mao's challenge, which is primarily about the arbitrator's refusal to use certain evidence in fashioning the final award, is outside the scope of [§ 572.19, subd. 1 (4), of the Minnesota Statutes].'' Id., 766–67.

In the present case, unlike in *Seagate Technology, LLC*, Ahmed's challenge falls squarely within the scope of § 52-418 (a) (3) and § 5706 (1) and (2) of title 10 of the Delaware Code Annotated as it involves the arbitrator's refusal to conduct a hearing on the merits of the parties' claims rather than the fashioning of the award at the conclusion of the hearing. Thus, *Seagate Technology, LLC*—in addition to the many other cases cited in this opinion—compels the conclusion that the arbitrator's award must be vacated. I therefore respectfully dissent.